**RICKEY IVIE (#76864)**
rivie@imwlaw.com
**JACK F. ALTURA (#297314)**
jaltura@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, 18th Floor
Los Angeles, CA  90017-2919
(213) 489-0028; Fax (213) 489-0552

Attorneys for Defendants,
**COUNTY OF LOS ANGELES and
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELDON LOCKETT | ) CASE NO.: 2:18-cv-5838-PJW |
| *Plaintiff* | ) **DEFENDANT COUNTY OF LOS** |
| | ) **ANGELES' MOTION FOR** |
| vs. | ) **SUMMARY JUDGMENT** |
| | ) |
| COUNTY OF LOS ANGELES, a | ) |
| public entity; LOS ANGELES | ) |
| COUNTY SHERIFF'S | ) |
| DEPARTMENT; a law enforcement | ) |
| agency; former SHERIFF JIM | ) |
| MCDONNELL; MIZRAIN ORREGO, | ) |
| a Deputy Los Angeles County Sheriff; | ) |
| SAMUEL ALDAMA, a Deputy Los | ) |
| Angeles County Sheriff; and DOES 1 | ) |
| through 100, inclusive, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |

**TO THE COURT AND THE PARTIES AND THEIR ATTORNEYS
OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date and time to be determined by
the Court,  Defendants COUNTY OF LOS ANGELES and LOS ANGELES
COUNTY SHERIFF'S DEPARTMENT (collectively, "COLA") will move for

summary judgment on Plaintiff SHELDON LOCKETT's ("Lockett") *Monell* claim.

This Motion is made following the meet and confer conference of counsel pursuant to Local Rule 7-3 which took place on or about May 27, 2020

Dated:  June 29, 2020       **IVIE McNEILL WYATT PURCELL & DIGGS**

By:   **/s/ Jack F. Altura**
RICKEY IVIE
JACK F. ALTURA
Attorneys for Defendants,
COUNTY OF LOS ANGELES, et al.

# Table of Contents

I.     INTRODUCTION.................................................................................1

II.    STATEMENT OF FACTS.........................................................................3

    A.   An Attempted Murder in the City of Compton Leads to a Call for Service.3

    B.   Aldama's and Orrego's Initial Interaction with Lockett..............................4

    C.   Use of Force Incident .................................................................4

    D.   Facts of the Field Show-Up.............................................................6

III.   LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT....6

IV.    ARGUMENT .................................................................................8

    A.   COLA is Entitled to Summary Judgment on Lockett's *Monell* Claim Because There is No Triable Issue of Fact that Deputy Aldama and Deputy Orrego were Not Members of a Deputy Clique at the Time of the Incident .........8

        a.   There is No Triable Issue of Material Fact that were Not Three or More Persons With the Subject Tattoo on the Date of the Incident ..........................10

        b.   There is no Triable Issue of Material Fact that the Deputy Clique's "Primary Activities" do not Consist of Engaging in Excessive Force Against African Americans ...............................................................11

        c.   Lockett cannot Raise a Triable Issue of Material Fact that Members of the Alleged Deputy Clique Engaged in a Pattern of Constitutional Violations 12

        d.   There is No Triable Issue of Material Fact that the Subject Tattoo is not Linked with or Represents a Deputy Clique ...................................................13

    B.   There is No Triable Issue of Fact that County Failed to Investigate Deputy Cliques or Failed to Discipline Deputies who Belong to Such Cliques ...............14

        1.   Legal Standard for Establishing a *Monell* Claim .......................................15

-i-

2.    There is no Triable Issue of Fact as to the Lack of a Custom or Practice of Failing to Investigate Deputy Cliques or Discipline Deputies Who Belong to Such Cliques ........................................................................................... 16

3.    There is no Triable Issue of Fact that COLA's Alleged Failure to Investigate and Discipline Deputies was not the "Moving Force" Behind Lockett's Injuries ............................................................................................ 17

4.    There is No Triable Issue of Fact that COLA was not Deliberately Indifferent in its Policies about Investigating and Disciplining Deputy Cliques 18

C.    No Triable Issue as to Lack of Ratification of Deputy Misconduct ........... 20

D.    No Triable Issue of Fact as to the Lack of Any Other Custom or Practice 21

E.    Lockett's Claims are Barred by the Statute of Limitation ......................... 22

V.    CONCLUSION ................................................................................................ 25

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)..................................6, 7

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997) ........ 18, 19

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998)...............22

*Cardenas v. Cty. of Riverside*, No. EDCV0800020VAPOPX, 2008 WL 11409164, at *4 (C.D. Cal. Apr. 25, 2008) ...............................................................................23

*Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ........................ 17, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)...........................................7

*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ..................................... 20, 21

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989)........................................ 15, 17

*Connick v. Thompson*, 563 U.S. 51, 61 (2011)...................................................19

*Cuadra v. City of S. San Francisco*, No. C 08-3439 TEH, 2009 WL 593988, at *4 (N.D. Cal. Mar. 5, 2009) .....................................................................................25

*Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir.2002)..........................................25

*Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014)...................19

*Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002) ..........................17

*Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) ............................. 16, 20

*Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) ......................17

*Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1014 (D. Ariz. 2012) ............20

*Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011) ................16

*In re Nathaniel C.*, 228 Cal. App. 3d 990, 1003 (1991) ........................................12

*Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) ..........................................18

*Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.)..................................................................................................................7

*Keyes v. Washington Cty.*, No. 3:15-CV-1987-AC, 2017 WL 3446256, at *6 (D. Or. Aug. 10, 2017)..............................................................................................19

*Lacy v. Palmer*, No. 12CV624-MMA (JMA), 2014 WL 12770245, at *8 (S.D. Cal. Apr. 30, 2014).................................................................. 13, 15, 18

*Lancaster v. Carey*, 2011 WL 2198313, at *14 (E.D.Cal. June 6, 2011)...............20

*Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 882–83, 890 (9th Cir.1990)...........................................................................20

*Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008)...22

*MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1102 (C.D. Cal. 2009)................................................................................22

*Meas v. City & Cty. of San Francisco*, 681 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010)............................................................................ 13, 15

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).... 15, 16, 22

*People v. Gardeley*, 14 Cal. 4th 605, 624 (1996) ......................................13

*People v. Prunty*, 62 Cal. 4th 59, 71 (2015) .............................................10

*People v. Sanchez*, 63 Cal. 4th 665, 374 P.3d 320 (2016)..........................13

*People v. Sengpadychith*, 26 Cal. 4th 316, 323 (2001)...............................11

*Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018)......19

*Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018).............. 16, 18

*Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014)....................20

*Snyder v. City & Cty. of San Francisco*, 288 Fed.Appx. 346, 347–48 (9th Cir. 2008)...............................................................................18

*Soares v. Cty. of Los Angeles*, No. 2:17-CV-00924-RGK-AS, 2018 WL 4896659, at *4 (C.D. Cal. Apr. 25, 2018) .........................................................20

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)..............................................................................6, 7

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)........................................ 16, 22

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012)........................19

*Wallace v. Kato*, 549 U.S. 384, 391 (2007) .............................................22

**Statutes**

Cal. Code Civ. Proc. § 335.1 ................................................................22

Cal. Penal Code § 186.22 ...................................................................9

Cal. Penal Code § 187 ........................................................................24

Cal. Penal Code § 245 ........................................................................24

Cal. Penal Code § 664 ........................................................................24

California Government Code § 945.3 ................................................23

California Penal Code § 417 ..............................................................24

**Other Authorities**

City of Compton Municipal Code § 7-8.3(a) .....................................24

**Rules**

Fed. R. Civ. P. 56(e) ............................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a use of force case brought under 42 U.S.C. § 1983.  Plaintiff Sheldon Lockett alleges that Defendant Deputy Samuel Aldama and Defendant Deputy Mizrain Orrego "severely battered" Lockett "with their fists, feet, batons, and Taser electronic weapons."  Discovery has revealed that these allegations are untrue.  Medical doctors who treated Lockett on the day of the incident have testified that he suffered no observable injuries to his chest, neck, and head.  In fact, nearly two years after filing his lawsuit, Lockett dismissed his excessive force claim against Orrego conceding that he used no excessive force.  Discovery has also revealed that Deputy Austin Embleton used the taser and that Deputy Carlos Feria used pepper spray.  Curiously, they are not defendants.

Lockett asserts a *Monell* claim against Defendant County of Los Angeles alleging it failed to investigate deputy "cliques"—groups of tattooed deputies who associate for the express purpose of engaging in acts of misconduct—and discipline deputies who belong to "cliques."  Lockett's central theory is that Orrego and Aldama belonged to a clique of tattooed deputies at the Compton sheriff's station and used excessive force on Lockett in furtherance of their membership in the clique.  (How Lockett squares this theory with his dismissal of Orrego is puzzling

The evidence shows Lockett's theory against COLA is unsubstantiated.  ████████    ████████████████████████████████████████, and Feria and Embleton who used higher levels of force (pepper spray and taser) do not have the tattoo at all.  ████████████████████████████████

████    There is no evidence establishing a link between the tattoo and a deputy clique; nor is there evidence establishing a link between the tattoo and purposeful misconduct.  It must be acknowledged that several deputies having the same tattoo is not inherently nefarious.  There must be some evidence connecting a tattoo with

-1-

bad behavior. It is this missing link in this case that shows that Lockett is unable to establish the existence of a deputy clique.

However, even if Lockett establishes the existence of a deputy clique, he cannot show COLA was deliberately indifferent in its investigation and disciplining of deputy cliques. COLA has investigated or is investigating the substantiated deputy cliques that engaged or are alleged to engage in routine acts of misconduct. For example, all members of the "Jump Out Boys" clique were terminated from the LASD. Further, there is an ongoing investigation into the existence of the "Banditos" clique and whether its members are engaging in misconduct in furtherance of the alleged clique. While the "Vikings" is an alleged clique that existed within the LASD, the Vikings have been defunct for decades. Aside these cliques, however, there are no other substantiated deputy cliques that engage in routine acts of misconduct. Therefore there are no deputy cliques that exist that COLA should have investigated but did not.

Nonetheless, even if COLA's investigation of prior deputy cliques was lacking, Lockett lacks evidence that that failure caused his injuries in this case. There is no evidence that the alleged inadequacy of COLA's investigation of prior deputy cliques existing at other LASD stations caused Aldama to use force on Lockett. And even if Lockett can establish causation, his *Monell* claim still fails because COLA was not on notice during any relevant time period of the need to investigate the clique that Aldama and Orrego are alleged to be members of. There is nothing in the record showing that on or prior to the date of the incident, COLA could have known that a clique existed at the Compton station.

In sum, Lockett has not and cannot establish a triable issue as to the lack of a clique or that COLA failed to investigate deputy cliques. Because there is no non-speculative basis for the jury to conclude that Orrego or Aldama were members of a clique and acted pursuant to the clique, COLA is entitled to summary judgment.

Lastly, Lockett's case is barred by the two-year statute of limitations for 42 U.S.C. § 1983 actions brought in California.  Lockett's claims accrued on the date of the incident, January 15, 2016, because that is when he suffered his actual injuries.  Yet Lockett filed his lawsuit on 9, 2018—more than two years later.  Moreover, no tolling provision applies.  The only possible tolling provision, California Government Code § 945.3 does not apply because Lockett's excessive force and *Monell* claims do not relate to any criminal offense that Lockett was charged with because of the use of force incident.

In the absence of a triable issue of fact as to the lack of a deputy clique and COLA's failure to investigate deputy cliques, COLA is entitled to summary judgment.

## II.   STATEMENT OF FACTS

### A.   An Attempted Murder in the City of Compton Leads to a Call for Service

In the afternoon of January 15, 2016, Imunique Ross and Treymayne Cole were standing in front of a house in the City of Compton in an area controlled by the Tree Top Piru street gang.  **Exhibit A** (Deposition of Imunique Ross), 32:18–33:15; 36:16–18; 40:9–43:17.  A silver car pulled up next to the residence, and the driver started shooting.  **Exhibit A**, 44:15–20; 50:6 –24; 53:24–54:15.  Mr. Cole was shot in the leg.  **Exhibit A**, 56:18–21.  The police were called and an all-crime broadcast was initiated describing the shooter and requesting assistance.

Deputy Samuel Aldama ("Aldama") and Deputy Mizrain Orrego ("Orrego") were patrolling in Compton and heard the all-crime broadcast.  **Exhibit B** (Deposition of Deputy Samuel Aldama, Volume I), 110:17–111:4; 114:12–19.  They assigned themselves to the call and immediately drove west to an area of Compton controlled by the rival Neighborhood Piru gang.  **Exhibit C** (Deposition of Deputy Mizrain Orrego Volume I), 35:11–16; 112:18–113:19; **Exhibit B**, 110:24–111:5.

-3-

**B.     Aldama's and Orrego's Initial Interaction with Lockett**

While patrolling, Aldama and Orrego saw two individuals, Plaintiff Sheldon Lockett ("Lockett") and his friend Timothy Campbell ("Campbell"), on the sidewalk in front of a house drinking out of silver cans, which appeared to resemble an alcoholic beverage like beer.  **Exhibit C**, 117:23–118:4; 118:20–119:3; 123:21–124:3; 124:17–20.   Drinking beer on public property like a sidewalk is a violation of Compton Municipal Code § 7-8.3(a), and the deputies stopped their radio car to talk to Lockett and Campbell.  **Exhibit C**, 125:8–16; 132:2–10.  Upon existing the vehicle, Aldama asked Lockett, "are you on probation or parole?"  **Exhibit C**, 144:10–16.  Lockett did not respond, but instead pulled out a handgun from his waistband and ran east away from the deputies. **Exhibit C**, 144:17–19; 146:8–13.

The deputies initiated a pursuit, and Orrego made a "417" call—person with gun—over the "patch."  **Exhibit C**, 147:24–148:1; 149:1–8.  A transmission over the "patch" is heard by all nearby deputies and facilitates coordination of an emergency situation like the one the deputies were handling.  **Exhibit C**, 174:21–175:1.  The pursuit ended when Lockett jumped over a wall into the enclosed patio of a nearby residence and tried to force his way in.  **Exhibit C**, 175:2–20.  The deputies heard the commotion, went to investigate, and found Lockett.  They held him at gunpoint until other deputies could arrive for backup.  **Exhibit C**, 176:2–17; **Exhibit B**, 146:16–23.

**C.     Use of Force Incident**

Deputy Carlos Feria ("Feria") and Deputy Austin Embleton ("Embleton) were patrolling in Compton when they heard the 417 call.  **Exhibit D** (Deposition of Deputy Carlos Feria), 29:4–30:1.  They responded to the call and set up a containment zone near the location that Aldama and Orrego had last seen Lockett. **Exhibit D**, 32:24–33:5.  After about a minute, Feria and Embleton received a radio transmission that Aldama and Orrego had located Lockett and were detaining a

few houses down, and they ran to that location.  **Exhibit D**, 48:17–49:7.  Aldama, Orrego, Feria, and Embleton formed an arrest team.  **Exhibit D**, 58:10–18. Feria was designated OC spray, Embleton was designated taser.  **Exhibit C**, 191:12–22. After forming the arrest team, Feria boosted himself over the wall and into the enclosed patio, as did Aldama.  **Exhibit D**, 50:19–51:1; 51:20–24; 58:10–22.

Lockett was inside the enclosed patio on his knees, initially complying with the deputies' order to get on the ground.  **Exhibit D**, 53:14–54:1; **Exhibit B**, 143:2–20. However, immediately after Feria and Aldama entered the patio, Lockett without notice or warning, fell forward onto his stomach and concealed both of his hands underneath his body by his waistband.  **Exhibit D**, 55:22–56:6; **Exhibit B**, 152:2–9.  The deputies ordered Lockett to show his hands, but he refused.  **Exhibit B**, 152:10–16.  Feria went to the right side of Lockett's body and with all his might began pulling on Lockett's right shoulder/arm area to secure his right hand for handcuffing.  **Exhibit D**, 56:4–6.   Aldama did the same on Lockett's left side. **Exhibit E** (Deposition of Deputy Samuel Aldama Volume II), 187:10–17; 193:22–194:8.

The deputies were unable to secure Lockett's hands.  Lockett was shifting his body from left to right preventing Feria from securing his hand.  **Exhibit D**, 79:9–22.  Aldama struck Lockett with his fists in order to gain compliance. **Exhibit B**, 151:12–14; **Exhibit E**, 189:22–190:2.  Feria deployed OC spray because Lockett was resistive and Feria believed that Lockett may have been attempting to retrieve a firearm from his waistband.  **Exhibit D,** 59:16–60:2.

Shortly after Feria deployed OC spray, Embleton jumped into the enclosed patio.  *See* Exhibit F (Deposition of Deputy Austin Embleton), 109:2–21. Lockett's hands were still concealed under his body.  **Exhibit F**, 101:10–11.  Prior to using the taser, Embleton yelled "Taser, Taser, Taser."  **Exhibit F**, 108:15–18. Then Embleton fired the taser because Lockett refused to give up his hands, and Embleton was in fear that he might be reaching for a firearm.  **Exhibit F**, 109:18–

21.  Lockett continued to resist, however, and Embleton used the taser a second time.  **Exhibit F,** 114:16–115:3.  After the second taser, the deputies were able to gain control over Lockett's hands and he was handcuffed.  **Exhibit F**, 126:4–10.

**D.    Facts of the Field Show-Up**

After Lockett's arrest, Deputy Rogelio Benzor was directed to transport Ross to the location of the arrest for a field show-up.  **Exhibit G** (Deposition of Deputy Rogelio Benzor), 102:22–103:4.  Ross identified Lockett at the shooter.  **Exhibit A**, 108:12–17. At the time Ross identified Lockett as the shooter, she believed she had made a correct identification.  **Exhibit A**, 108:16–20.

At Lockett's preliminary hearing, Ross recanted her identification testifying that Lockett was not the shooter.  **Exhibit A**, 110:3–16.  However, Ross never said that she might be mistaken about her identification.  **Exhibit A**, 108:21–23.  She never told said that she had difficulty seeing out of her right eye.  **Exhibit A**, 109:1–4.  She never requested to get closer to Lockett to make the identification.  **Exhibit A**, 109:16–19.  She never told anybody that she couldn't see Lockett clearly or that she needed corrective lenses.  **Exhibit A**, 109:20–110:2.

On August 2, 2016, the district attorney dropped all charges against Lockett and he was released from custody shortly thereafter.  **Exhibit K**.

**III.    LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit".  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  "The materiality of a fact is thus determined by the substantive law governing the claim or defense."  *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

The absence of a genuine issue of material fact may be demonstrated by pointing out to the district court that "there is an absence of evidence to support the nonmoving party's case" on issues where the nonmoving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the party moving for summary judgment meets its initial burden of identifying materials that demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.). The nonmoving party may not merely state that it will discredit the moving party's evidence at trial. *See Anderson*, 477 U.S. at 256. Instead, it must produce at least some "significant probative evidence tending to support the complaint." *Id.* at 256.

In deciding the existence of a material fact, the court does not weigh conflicting evidence and does not make credibility determinations. *Id.* at 255. While the court must view the evidence in the light most favorable to the nonmoving party and inferences must be drawn in light most favorable to the nonmoving party, inferences may be drawn in favor of the nonmoving party only if "rational" or "reasonable" and otherwise permissible under the governing substantive law. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31. "Clearly, there must be some limit on the extent of the inferences that may be drawn in the nonmoving party's favor from whatever specific facts it sets forth; if not, Rule 56(e)'s requirement of specific facts would be entirely gutted." *Id.* (internal quotations omitted).

"Thus, the court's ultimate inquiry is to determine whether the specific facts set forth by the nonmoving party, coupled with undisputed background or

-7-

contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Id.* at 631.

## IV.   ARGUMENT

### A.   COLA is Entitled to Summary Judgment on Lockett's *Monell* Claim Because There is No Triable Issue of Fact that Deputy Aldama and Deputy Orrego were Not Members of a Deputy Clique at the Time of the Incident

COLA is entitled to summary judgment because there is no triable issue of fact that Aldama and Orrego were not members of a deputy clique at the time of the incident.  The *Monell* claim alleges that COLA's failure to investigate deputy cliques within the LASD caused the formation of a new deputy clique at the Compton station represented by a common tattoo and alleges that Aldama and Orrego were members of this clique.  ECF #41, ¶ 47(e)(ii)–(v).  Specifically, Lockett alleges that the failure to investigate deputy cliques was the "moving force behind [his] injuries because [he is] informed and believe[s] that Defendants ALDAMA and DOES 1-20 *were members of the heretofore unknown clique/clique, and that they were positioned to commit acts of violence against Plaintiffs in association with that membership*."  ECF #41, ¶ 47(e)(v) (emphasis added).

Thus, for Lockett to survive this motion for summary judgment he must raise a triable issue of fact of: (1) the existence of a deputy clique at the Compton Station on and prior to the date of the incident; (2) Aldama's and Orrego's membership in that clique on and prior to the date of the incident; and (3) that Aldama's and Orrego's actions on the date of the incident were made in furtherance of that clique.  The incontrovertible evidence shows that Lockett cannot meet his burden.

Lockett cannot meet his burden because he cannot establish that a single deputy—let alone the defendant deputies—had the subject tattoo on and prior to the date of the incident. ███████████████████

-8-

██████████████████████████████████████████ . ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ .  However, even assuming that there were deputies with the tattoo at the Compton Station during the relevant time period, Lockett cannot establish that the group constituted a "deputy clique"—a group whose primary activities was to engage in excessive force against African Americans.  It must be accepted that deputies with the same tattoo does not mean that the group is a clique dedicated to violating the rights of African Americans.  Since Lockett's *Monell* claim depends on proving this fact, which he cannot do, he cannot raise a triable issue as to the existence of a deputy clique during the relevant time period.

Therefore, COLA is entitled to summary judgment.

### 1.  What is a "Deputy Clique"

The central issue in this motion is defining what is a "deputy clique." Surely, neither Lockett nor COLA may arbitrarily define a deputy clique—there must be some logical, grounded definition of the term.  Since Lockett's allegations about deputy cliques encompass allegedly criminal activity, ECF #41, ¶¶ 39, 47,[1] California's definition of a criminal street gang is instructive, and the Court should adopt that definition for this Motion.

California law defines a "criminal street gang" as an "ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of [one or more of certain enumerated criminal offenses], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity."  Cal. Penal Code § 186.22.

---

[1]For example, Lockett alleges that "[s]aid clique/gangs are responsible for violent illegal acts and are rewarded for those acts."  ECF #41, ¶ 47 (e)(iii).

The California Supreme Court has explained that a "criminal street gang" is an "ongoing organization, association, or group" that (1) "must have 'three or more persons'"; (2) the group's "primary activities" must consist of certain crimes; (3) the group must also have "a common name or common identifying sign or symbol"; (4) and its members must be proven to have engaged in a "pattern of criminal activity" by committing predicate offenses. *People v. Prunty*, 62 Cal. 4th 59, 71 (2015).

The Court should adopt California's definition of a criminal street gang in determining whether there is a deputy clique in this case. Lockett himself used that definition in deposing COLA's Rule 30(b)(6) witness on the "history" of deputy cliques. **Exhibit H**, 80:18–82:24. Lockett cannot raise a triable issue on any of these four elements.

**2. Lockett cannot Raise a Triable Issue of Fact as to the Existence of a Deputy Clique in this Case**

    **a. There is No Triable Issue of Material Fact that were Not Three or More Persons With the Subject Tattoo on the Date of the Incident**

Lockett cannot raise a triable issue of fact that there were three or more deputies with the subject tattoo on the date of the incident. Since Lockett cannot establish this fact, he cannot establish the existence of a deputy clique.



dent.

. **SSUMF # 13**.

**SSUMF #1, 10**. While Aldama testified that there are approximately 10 deputies with the subject tattoo, Lockett has never established who those deputies are, when those deputies got the tattoo, or why they got it. **SSUMF # 27**. Any assertion by Lockett that the 10 deputies had the subject tattoo

-10-

prior to the incident would be based on inadmissible speculation.  Similarly any assertion by Lockett as to the reason why the 10 deputies purchased the subject tattoo would be based on inadmissible speculation.

This incontrovertible evidence shows that at the time of the incident, there is no triable issue of fact that there was not a deputy clique of "three or more persons."  Without being able to establish this critical element, Lockett's *Monell* claim fails.

> **b.  There is no Triable Issue of Material Fact that the Deputy Clique's "Primary Activities" do not Consist of Engaging in Excessive Force Against African Americans**

Even assuming that there was a group of deputies at the Compton Station in existence on and prior to the incident with the subject tattoo, Lockett cannot raise a triable issue of fact that the group's "primary activities" consisted of engaging in excessive force against African Americans.

*People v. Sengpadychith*, 26 Cal. 4th 316, 323 (2001) defines "primary activities."  "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute."  *Id.* at 324 (emphasis in original).  This definition "would necessarily exclude the occasional commission of those crimes by the group's members."  *Id.* at 323.   Presciently, the California Supreme Court noted:

> [t]hough members of the Los Angeles Police Department may commit an enumerated offense while on duty, *the commission of crime is not a primary activity of the department*. Section 186.22 ... requires that one of the primary activities of the group or association itself be the commission of [specified] crime[s].... Similarly, environmental activists or any other group engaged in civil disobedience could not be considered a criminal street gang under the statutory definition unless one of the primary activities of the group was the commission of one of the enumerated crimes found within the statute.

*Id.* at 323–24 (citations omitted) (emphasis added).

-11-

Lastly, the Supreme Court noted that evidence of *past or present* conduct by gang members involving the commission of … crimes is relevant in determining the group's primary activities because both past and present offenses have some tendency to show the group's primary activity. *Id.* at 323.

Lockett has failed to uncover any evidence what "primary activities," if any, the deputies who have the subject tattoo engage in. **SSUMF #45**. There is simply no evidence that the alleged deputy clique has "consistently and repeatedly" committed acts of excessive force against African Americans. **SSUMF #46**. Thus, Lockett's *Monell* claim based on a deputy clique fails.

### c. Lockett cannot Raise a Triable Issue of Material Fact that Members of the Alleged Deputy Clique Engaged in a Pattern of Constitutional Violations

Assuming (again) the existence of a deputy clique, Lockett cannot raise a triable issue of material fact that any member of the clique engaged in a pattern of excessive force against African Americans. California Penal Code § 186.22 defines a "pattern of criminal gang activity" as "the commission of, attempted commission of, conspiracy to commit, or solicitation of…, or conviction of two or more of [certain enumerated] offenses, provided [that] the offenses were committed on separate occasions, or by two or more persons."

To constitute a "pattern," the statute requires that the offenses be "committed on separate occasions, or by two or more persons...." *In re Nathaniel C.*, 228 Cal. App. 3d 990, 1003 (1991). A pattern can be established by two or more incidents, each with a single perpetrator, or by a single incident with multiple participants committing one or more of the specified offenses. *Id.*

Evidence supporting a "pattern of criminal gang activity" must be admissible. Evidence in the form of inadmissible hearsay or statements made by witnesses who lack personal knowledge cannot sustain a "pattern." *Id.* Documentary evidence of a sustained finding of excessive force may be sufficient evidence of a predicate offense. *Cf. People v. Gardeley*, 14 Cal. 4th 605, 624

(1996) (disapproved of on other grounds by *People v. Sanchez*, 63 Cal. 4th 665, 374 P.3d 320 (2016)) (holding that documentary evidence of criminal conviction is sufficient evidence of predicate offense).

In this case, there is no admissible evidence that members of the alleged deputy clique engaged in a pattern of excessive force against African Americans. **SSUMF #47**.  Mere allegations of excessive force are insufficient to show a pattern.  *Cf. Lacy v. Palmer*, No. 12CV624-MMA (JMA), 2014 WL 12770245, at *8 (S.D. Cal. Apr. 30, 2014).  To show a pattern, the plaintiff must show that "the complaints [against the deputy] were meritorious, and that the allegations of misconduct are meritorious."  *Meas v. City & Cty. of San Francisco*, 681 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).

Since Lockett cannot identify even a single sustained finding of excessive force—let alone a sufficient pattern of excessive force *by all three deputies* that would constitute a primary activity—Lockett cannot establish this element of a deputy clique.

### d.  There is No Triable Issue of Material Fact that the Subject Tattoo is not Linked with or Represents a Deputy Clique

There is no triable issue of fact that the subject tattoo is not linked with or represents a deputy clique. ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████

There was no requirement that another deputy allow Aldama to get the tattoo.  **SSUMF #4**.  Anybody can get the tattoo.  **SSUMF #5**.  Aldama could have gotten it on his first day of work.  **SSUMF #6**.  There is no name for the deputies who have the tattoo.  **SSUMF #7**.  There are no gatherings or meetings of deputies with the tattoo as far as Aldama is aware.  **SSUMF #8**.  Deputies with the tattoo do not refer to themselves in a particular way, as far as Aldama is aware. **SSUMF #9**.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

Neither Embleton nor Feria have the subject tattoo.  **SSUMF #25**.

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

This evidence—which Lockett cannot dispute—shows that the tattoo has no connection to a deputy clique.

*\*\**

In sum, Lockett cannot raise a triable issue of fact as to any of the elements of a criminal street gang.  Since his claim against COLA is dependent proving the existence of a "gang," which he cannot do, COLA is entitled to summary judgment.

**B.**    **There is No Triable Issue of Fact that County Failed to Investigate Deputy Cliques or Failed to Discipline Deputies who Belong to Such Cliques**

Even assuming that Lockett can raise a triable issue of fact as to the existence of a deputy clique, he cannot establish that COLA failed to investigate deputy cliques or discipline deputies who belong to such cliques.  First, COLA has investigated and disciplined all recent, substantiated deputy cliques.  Second, Lockett cannot establish that COLA's alleged failure to investigate prior deputy

-14-

cliques at other stations caused his injuries in this case.  Third, COLA could not have been on notice of the existence of a deputy clique at Compton at the time of the incident because there was no evidence of the existence of a deputy clique on or prior to that date.

### 1. Legal Standard for Establishing a *Monell* Claim

A local government is liable for an injury under § 1983 under three possible theories.  First, a local government may be liable if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Third, a local government may be held liable under a ratification theory if an official with final policy-making ratified a subordinate's unconstitutional decision or action and the basis for it.  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013).

To demonstrate a triable issue as to the existence of a custom or practice, mere allegations are insufficient.  *Lacy*, 2014 WL 12770245, at *8.  "To survive summary judgment based on a claim of prior complaints of misconduct, plaintiff is required to show that the complaints were meritorious, and that the Police Department failed entirely to investigate the complaints."  *See Meas*, 681 F. Supp. 2d at 1142.

///

///

///

-15-

### 2. There is no Triable Issue of Fact as to the Lack of a Custom or Practice of Failing to Investigate Deputy Cliques or Discipline Deputies Who Belong to Such Cliques

There is no triable issue of fact as to the lack of a custom of failing to investigate deputy cliques and failing to discipline deputies who belong to such cliques.  Absent a formal governmental policy, a plaintiff may establish *Monell* liability through showing a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).  The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy."  *Monell*, 436 U.S. at 691.  Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).  "[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished."  *Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011); *see also Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018).

Lockett cannot raise a triable issue of material fact that COLA had a custom or practice of failing to investigate deputy cliques that engaged in routine acts of misconduct and discipline deputies who belong to such cliques and engaged in misconduct in furtherance of their membership of the clique.  The only substantiated deputy clique that engaged in acts of misconduct is the Jump Out Boys.  **SSUMF # 26**.  The Jump Out Boys were investigated and the deputies involved terminated.  **SSUMF # 27**.  While the Vikings are alleged to have engaged in acts of misconduct, the clique had been defunct for at least twenty years before the incident in this case.  **SSUMF # 28**.  Any act or omission by COLA with respect to the Vikings is too distant to have any bearing on this case.

-16-

While there are allegations of other deputy *groups* having existed in LASD, there is no admissible evidence that these groups were cliques. In fact there is no admissible evidence as to the purpose, if any, of these groups. For example, it has not been established whether the "Banditos" are a group of deputies formed to violate the law (a deputy clique); or, contrarily, whether the Banditos is something innocuous, and a couple of its members have, independent of their association with the Banditos, engaged in misconduct. There is a current investigation into this issue. **SSUMF #32**.

Further, LASD investigates allegations of misconduct, such as excessive force, but does not investigate allegations about tattoos or deputy subgroups absent information that connects the tattoos or subgroups to misconduct. **SSUMF # 30, 31**. There was no such evidence of misconduct at the Compton station on and prior to the date of the incident that could have or should have triggered an investigation. **SSUMF # 30**.

In the absence of admissible evidence establishing that deputy cliques went uninvestigated and deputies belong to cliques went undisciplined, Lockett's *Monell* claim fails.

**3. There is no Triable Issue of Fact that COLA's Alleged Failure to Investigate and Discipline Deputies was not the "Moving Force" Behind Lockett's Injuries**

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. "To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). There must be a "direct causal link" between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton*, 489 U.S. at 385. To be a direct causal link or moving force behind the plaintiff's injury, the court "must find that the identified deficiency in the County's policies is closely related to the

-17-

ultimate injury." *See Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002), overruled by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In other words, Lockett must demonstrate that "that the injury would have been avoided" had COLA adequately investigated and disciplined deputy cliques. *See id.; Lacy*, 2014 WL 12770245, at *8.

Lockett cannot meet this "rigorous standard[] of culpability and causation." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997). There is insufficient evidence showing that the alleged constitutional violations by the deputies occurred because of COLA's inadequate investigation of deputy cliques. **SSUMF #33**. In other words, "[t]here is nothing in the record to suggest that [the] Defendants would not have exercised force on Plaintiff had the County properly supervised, disciplined, or investigated [deputy cliques]." *Lacy*, 2014 WL 12770245, at *8.

Specifically, there is no evidence to suggest that Aldama or Orrego believed that COLA inadequately investigated and disciplined deputy cliques. There is no evidence to suggest that Aldama or Orrego believed that if they engaged in routine acts of excessive force against African Americans, they would suffer no discipline. Without a direct causal link between the alleged inadequate investigation and discipline and the alleged constitutional violations, Lockett's *Monell* claim fails. *See Snyder v. City & Cty. of San Francisco*, 288 Fed.Appx. 346, 347-48 (9th Cir. 2008) (affirming summary judgment for defendant based on insufficient evidence of causation on claim that it was liable under *Monell* for assault by off-duty officer).

### 4. There is No Triable Issue of Fact that COLA was not Deliberately Indifferent in its Policies about Investigating and Disciplining Deputy Cliques

To state a claim based on an "inaction" theory, such as a failure to investigate and failure to discipline, a plaintiff must show that the custom or practice amounts to "deliberate indifference to the plaintiff's constitutional right."

-18-

*Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014); *see also Rodriguez*, 891 F.3d at 803.  "This requires showing that the defendant 'was on actual or constructive notice that its omission would likely result in a constitutional violation,'" *id.* (*quoting Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012)), and yet the defendant nonetheless chose to retain that policy.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Brown*, 520 U.S. at 410.  Only when the need for more investigations or discipline is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the public entity can reasonably be said to have been deliberately indifferent.  *Castro*, 833 F.3d at 1076.

Lockett cannot meet this standard because COLA lacked actual and constructive notice of the existence of a deputy clique at the Compton station on or before the incident.  There is nothing in the record to suggest that at the time of the incident, COLA could have known that a deputy clique existed at the Compton station or that COLA should have investigated the Compton for the existence of a deputy clique.  **SSUMF #30, 34**.  For example, Lockett cannot identify a "pattern of prior constitutional violations" either at Compton station or any other sheriff's station that went undisciplined.  *See Keyes v. Washington Cty.*, No. 3:15-CV-1987-AC, 2017 WL 3446256, at *6 (D. Or. Aug. 10, 2017).

Moreover, deliberate indifference is unlikely to be established when the plaintiff alleges the defendants engaged in criminal acts, as opposed to mere constitutional violates.  *See id.*; *cf. Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014) ("If the threat of prison time does not sufficiently deter sexual assault, it is not plausible to assume that a specific instruction not to commit sexual assault will provide such deterrence.").

///

///

-19-

**C.      No Triable Issue as to Lack of Ratification of Deputy Misconduct**

Lockett's failure to investigate and discipline claim also fails under a ratification theory.  *See Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018).  "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd on other grounds*, 575U.S. 600 (2015).  Neither a policymaker's mere knowledge of, nor the policymaker's mere refusal to overrule or discipline, a subordinate's unconstitutional act suffices to show ratification.  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  Ratification requires more than a supervisor's subsequent approval of an unconstitutional act.  *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1014 (D. Ariz. 2012).  "To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983 law." *Gillette*, 979 F.2d at 1348. Under the ratification theory, a final policymaker, by endorsing the decision of a subordinate to whom he has delegated authority "simply makes clear that the policy was in effect at the time of the incident and was the 'moving force' for the unconstitutional act."  *Lancaster v. Carey*, 2011 WL 2198313, at *14 (E.D.Cal. June 6, 2011).

In this case, the final policymaker of the LASD is the sheriff.  *Soares v. Cty. of Los Angeles*, No. 2:17-CV-00924-RGK-AS, 2018 WL 4896659, at *4 (C.D. Cal. Apr. 25, 2018); *cf. Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 882–83, 890 (9th Cir.1990).  At the time of Lockett incident, Sheriff McDonnell was the sheriff and therefore the final policymaker for LASD.

Lockett's ratification claim fails as a matter of law because there is no evidence that Sheriff McDonnell approved of Aldama's or Orrego's actions and the basis for those actions.  In fact, Sheriff McDonnell ordered an inquiry into deputy cliques.  **SSUMF # 29**.  At the time of incident, there was no evidence of

-20-

the existence of a deputy clique at the Compton Station or that Aldama or Orrego were alleged members of that clique.  Therefore, without any knowledge of the existence of the clique, Aldama's or Orrego's membership in the clique, or actions taken in furtherance of the clique, Sheriff McDonnell could not have ratified the deputies' acts and *the basis for them*.  **SSUMF #35**.

*Christie v. Iopa* is dispositive for this proposition.  In that case, the Ninth Circuit affirmed the dismissal of plaintiff's ratification claim because there was no evidence that the final policymaker knew of the facts underlying the defendant's alleged constitutional violations while those violations were ongoing.  176 F.3d at 1239 ("[R]atification requires, among other things, knowledge of the alleged constitutional violation").  The final policymaker's knowledge of the alleged constitutional violations came at a later date when the violations had ceased.  *Id.*

## D.   No Triable Issue of Fact as to the Lack of Any Other Custom or Practice

Lockett's primary *Monell* argument is about deputy cliques and COLA's investigation and discipline of deputies who belong to such cliques.  However, Lockett asserts a host of garden-variety, boilerplate *Monell* allegations that lack any evidentiary basis.  In the parties' meet and confer efforts, COLA requested that Lockett dismiss some of these claims to narrow the issues to be decided by the Court.  Lockett said that decision would be made at a later date, but has thus far not done so.  Ultimately, COLA is entitled to summary judgment on these claims because there insufficient evidence to support them.

Lockett alleges the following custom and practices:

- COLA tolerates excessive force, ECF #41, ¶ 47(a), p.10
- COLA tolerates unlawful tasing of arrestees, ECF #41, ¶ 47(b), p.10
- COLA tolerates racial animus by deputies, ECF #41, ¶ 47(c), p.10
- COLA fails to use appropriate procedures for detentions and arrests, ECF #41, ¶ 47(d), p.10

-21-

- COLA tolerates false police reports, false statements, intimidating witnesses, and obstructing with an investigation, ECF #41, ¶ 47(e), pp. 10–11
- COLA tolerates a code of silence, ECF #41, ¶ 47(f), p.11
- COLA tolerates inadequate procedures for investigating complaints of officer misconduct, ECF #41, ¶ 47(f), p. 11;
- COLA fails to properly hire or train deputies, ECF #41, ¶ 56, p.12.

There is simply no evidence that COLA has a custom or practice about any of these allegations. **SSUMF #36**.  At most, Lockett raises a triable issue as to the existence of these issues in the Lockett case only.  However, a single act of misconduct is not sufficient to support a custom or practice.  "Liability for improper custom may not be predicated on isolated or sporadic incidents" and "[t]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'"  *Trevino*, 99 F.3d at 918 (9th Cir.1996) (*quoting Monell*, 436 U.S. at 691).  Lockett has no evidence of a "persistent and widespread custom as to any of these issues and so COLA is entitled to summary judgment.

**E.    Lockett's Claims are Barred by the Statute of Limitation**

An independent ground that COLA is entitled to summary judgment is that Lockett's claims are barred by the statute of limitation.  Lockett's claims accrued on January 15, 2016 because that is the date that Lockett became aware of his actual injuries.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998).  A "claim accrues upon awareness of the actual injury," not upon awareness of a legal wrong.  *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008).  A "cause of action accrues even though the full extent of the injury is not then known or predictable."  *Wallace v. Kato*, 549 U.S. 384, 391 (2007).

Yet Lockett did not file the Complaint until July 9, 2018 after the expiration of the two-year statute of limitations expired.  *MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1102 (C.D. Cal. 2009); Cal. Code Civ. Proc. § 335.1. Lockett's claims are barred unless tolled.  *See id.*

The only possible tolling statute is California Government Code § 945.3, which states in relevant part:

> No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.
>
> Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court.

However, Lockett's claim against the deputies and COLA is not based upon conduct that is related to any criminal offense for which he was charged.  Ninth Circuit courts have found that § 945.3 tolls a civil claim in two situations: (1) the plaintiff is charged with resisting arrest or battery on police officer and subsequently sues for excessive force or false arrest arising out of the same facts (the facts underlying the civil claim and the criminal offense are the same), *see e.g.*, ; and (2) the officer used force while investigating, arresting, or detaining the plaintiff for a crime he or she was later charged with, *see e.g.*, *Cardenas v. Cty. of Riverside*, No. EDCV0800020VAPOPX, 2008 WL 11409164, at *4 (C.D. Cal. Apr. 25, 2008).

Neither of these situations is present here.  First, Lockett was not charged with resisting arrest or battery on a peace officer.  **SSUMF # 38**.  Second, the

-23-

deputies did not use force while "investigating," "arresting," or "detaining"
Lockett for attempted murder.  Case law supports this conclusion.

In *Cardenas*, 2008 WL 11409164, at *1, *4, officers executing a search
warrant for drug-related offenses shot and injured the plaintiff.  The plaintiff was
later criminally charged with drug possession, and then filed a § 1983 lawsuit
alleging excessive force.  *Id.* at *4.  While the facts underlying the excessive force
claim occurred at a different time and place than the facts supporting the drug
charges, the Court found the two were "related." *Id.* at *5.  The civil claim and
criminal were related because the facts underlying the excessive force claim arose
during the investigation arrest, or detention of the plaintiff for the drug charges.  *Id.*

In this case, by contrast, Orrego, the driver of the radio car, did not stop his
radio car to investigate, arrest, or detain Lockett for attempted murder.  **SSUMF
#39**.  While it is true that Orrego was aware that an attempted murder had been
reported and they were in the general vicinity looking for a suspect, he did not stop
his vehicle to investigate it.  **SSUMF #40**.  The incontrovertible facts show that
Orrego approached Lockett because he was drinking out of a silver can on public
property, which appeared to be a violation of the City of Compton Municipal Code
§ 7-8.3(a).[2]  **SSUMF #40**.

Moments after the deputies approached Lockett, he brandished a firearm and
ran.  As the deputies pursued Lockett, Orrego reported over his police radio that
Aldama and he were in pursuit of a "417" suspect.  **SSUMF #41**.  A "417" suspect
refers to California Penal Code § 417—brandishing a firearm.  Police officers in

---

[2]Compton Municipal Code § 7-8.3(a)states: "No person shall drink any alcoholic
beverage: (1) on any public street, sidewalk, parkway or alley, City park, City
recreation area, City open space, or playground, or in any railroad depot or bus
station, or any public place unless authorized by the City Manager; or (2) in any
place open to the patronage of the public, which premises are not licensed for the
consumption of such liquor or alcoholic beverage on the premises; or (3) on private
property open to public view without the express permission of the owner, his or
her agent, or the person in lawful possession thereof."

-24-

pursuit of an attempted murder suspect are trained to report a "245" suspect (assault with a deadly weapon), *see* Cal. Penal Code § 245, or "187/664" suspect (murder/attempted murder).  *See* Cal. Penal Code § 187; Cal. Penal Code § 664. Neither deputy reported a "245" or "187/664" in this case.  **SSUMF #42**.

At Lockett's preliminary hearing for attempted murder, neither Aldama nor Orrego testified.  **SSUMF #43**.  In fact, the only evidence presented by the district attorney was the identification by the shooting victim Imunique Ross.  **SSUMF #44**.  The head district attorney's decision to file Information was based solely on the testimony at the preliminary hearing.

These incontrovertible facts show that the attempted murder charge is not related to excessive force claim for purposes of tolling under § 945.3.

Since Lockett's excessive force claim is barred by the statute of limitations, so too is his *Monell* claim since that is the only constitutional violation that Lockett alleges.  *Cuadra v. City of S. San Francisco*, No. C 08-3439 TEH, 2009 WL 593988, at *4 (N.D. Cal. Mar. 5, 2009) (*citing Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir.2002) for the proposition that a *Monell* claim requires the plaintiff to show a constitutional deprivation).

## V.    CONCLUSION

For the foregoing reasons, COLA respectfully requests that the Court grant this Motion and enter a judgment in favor of COLA.

Dated:  June 29, 2020          **IVIE, McNEILL & WYATT**

By:    **/s/ Jack F. Altura**
       RICKEY IVIE
       JACK F. ALTURA
       Attorneys for Defendants,
       COUNTY OF LOS ANGELES