```
 1               UNITED STATES DISTRICT COURT
 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA
 3
 4    SHELDON LOCKETT; MICHELLE    )
      DAVIS; AND CLYDE DAVIS,      )
 5                                 )
              PLAINTIFFS,          )
 6                                 ) CASE NO. 18-CV-5838-PJW
         VS.                       )
 7                                 )
      COUNTY OF LOS ANGELES, A     )
 8    PUBLIC ENTITY; LOS ANGELES   )
      COUNTY SHERIFF'S DEPARTMENT, A)
 9    LAW ENFORCEMENT AGENCY;      )
      SHERIFF JIM MCDONNELL; MIZRAIN)
10    ORREGO, A DEPUTY LOS ANGELES )
      COUNTY SHERIFF; AND DOES 1   )
11    THROUGH 100, INCLUSIVE,      )
                                   )
12            DEFENDANTS.          )
13    _____)
14        PORTIONS OF THIS TRANSCRIPT ARE CONFIDENTIAL
15
16     REMOTE VIDEOTAPED VIDEOCONFERENCED DEPOSITION OF
17                     MIZRAIN ORREGO
18                  FRIDAY, MAY 22, 2020
19                       VOLUME II
20   JOB NO. 4116350-1
21   REPORTED BY:  TAMARA L. CARLSON
22   CSR NO. 12555
23
24   PAGES 237 - 293
25   PAGES 277 - 289 ARE CONFIDENTIAL AND ARE BOUND SEPARATELY
```

Page 237

```
 1   REMOTE VIDEOTAPED VIDEOCONFERENCED DEPOSITION OF
 2   MIZRAIN ORREGO, VOLUME II, TAKEN ON BEHALF OF THE
 3   PLAINTIFFS AT 10:21 A.M., FRIDAY, MAY 22, 2020, AT
 4   LOS ANGELES, CALIFORNIA, BEFORE TAMARA L. CARLSON,
 5   CSR NO. 12555, CERTIFIED SHORTHAND REPORTER IN AND
 6   FOR THE STATE OF CALIFORNIA.
 7
 8
 9
10   APPEARANCES OF COUNSEL:
11   FOR THE PLAINTIFFS:
12           THE SWEENEY FIRM
             BY:  JOHN E. SWEENEY, ESQ.
13                (APPEARING VIA VIRTUAL ZOOM)
             315 SOUTH BEVERLY DRIVE
14           SUITE 305
             BEVERLY HILLS, CALIFORNIA 90212
15           (310)277-9595
             JES@THESWEENEYFIRM.COM
16
             --- AND ---
17
             GLICKMAN & GLICKMAN, A LAW CORPORATION
18           BY:  STEVEN C. GLICKMAN, ESQ.
                  (APPEARING VIA VIRTUAL ZOOM)
19           9460 WILSHIRE BOULEVARD
             SUITE 330
20           BEVERLY HILLS, CALIFORNIA 90212
             (310)273-0829
21           SCG@GLICKMAN-LAW.COM
22
23
24
25    (APPEARANCES CONTINUED ON THE FOLLOWING PAGE)
```

Page 238

```
 1             MR. HURRELL:  Objection.  John, that          10:46
 2   assumes a lot of facts that haven't been
 3   established, specifically that Mr. Orrego arrested
 4   him for the shooting, so...
 5   BY MR. SWEENEY:                                         10:47
 6       Q.  You contacted, with your partner, the
 7   person you -- that was eventually arrested for the
 8   shooting on Oleander; is that true?
 9             MR. ALTURA:  Objection.  Assumes facts and
10   lacks foundation.                                       10:47
11             MR. SWEENEY:  Okay.
12   BY MR. SWEENEY:
13       Q.  You can answer.
14       A.  Our initial contact was not because we were
15   certain that he was the suspect for that shooting.      10:47
16       Q.  Sir, this is not a trick question.  I'm
17   just trying to get your testimony and confirm that
18   you -- because I want to -- it's going to lead to
19   another question.
20           You are the ones that first contacted           10:47
21   Mr. Lockett from your department; correct?
22       A.  Correct.
23       Q.  All right.  So you did it based on a
24   description that you heard from the dispatcher;
25   true?                                                   10:47
```

CONFIDENTIAL

```
 1                    EXAMINATION                       11:26
 2   BY MR. ALTURA:
 3        ▇   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
 4   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
 5        ▇   ▇▇▇▇▇▇▇▇                                  11:27
 6        ▇   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
 7        ▇   ▇▇▇▇▇▇▇▇
 8            MR. PONGRACZ:  Objection.  Third party
 9   privacy.
10            Go ahead.                                 11:27
11            (The reporter requested clarification.)
12            MR. PONGRACZ:  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
14   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
15   BY MR. ALTURA:                                    11:27
16        ▇   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18   ▇▇▇▇▇▇▇▇▇▇
19            MR. PONGRACZ:  ▇▇▇▇▇▇▇▇  ▇▇▇▇▇▇▇▇
20   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇.                          11:27
21            Go ahead.
22            ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇
23   BY MR. ALTURA:
24        ▇   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
25   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇                      11:27
```

```
 1   █ ████████████                                          11:27
 2   █ ██████████████████████████████████████████████
 3   ████████████████████████████████████████████████████
 4   █ ██████████████████████████████████████████████████
 5   █████████████                                           11:28
 6   █ ████████████████████████████████████████████████
 7   ████████████████████
 8        A.   Yes, sir.
 9        Q.   All right.   You --
10             MR. HURRELL:   2018.                          11:28
11             MR. ALTURA:   Thank you, Mr. Hurrell.
12   BY MR. ALTURA:
13        Q.   So that would be -- just to correct the
14   record, Mr. Orrego, it would be June, July, or
15   August of 2018?                                         11:28
16        A.   Yes, sir, I believe so.
17        Q.   And can you narrow that down any further to
18   one or two months?
19        A.   I don't remember the exact months.
20        Q.   I understand, sir.                            11:28
21             How did you found -- how did you find out
22   about Mr. -- excuse me, Deputy Aldama's illness?
23        A.   I don't recall.   He may have called me or
24   we may have found out through his family.
25        Q.   And did your getting the tattoo on your       11:29
```

Page 286

```
1    calf have anything to do with the fact that Deputy        11:29
2    Aldama was diagnosed with this serious illness?
3        A.   100 percent.
4        Q.   And can you explain in what way that
5    diagnosis affected you -- your getting the tattoo?        11:29
6        A.   Well, sir, we both gave our life, you know,
7    for -- to serve the community in Compton; and,
8    you know, I was no longer part of doing what I love
9    to do.  You know, I was like jobless at home and my
10   partner was going through a very hard time, and I         11:29
11   believed that there was a possibility that he was
12   not going to make it anymore, so I wanted to have
13   something that I shared with him, and that was it,
14   sir.
15       Q.   How long were you Deputy Aldama's partner        11:29
16   for?
17       A.   I have known Deputy Aldama for a long time,
18   but partners in the same patrol vehicle, I'll say
19   approximately two years.
20       Q.   And how long did you know Deputy Aldama          11:30
21   before that, as a deputy?
22       A.   About ten years, sir.
23            (The nonconfidential portion of this
24            deposition continues on page 290.)
25
```

CONFIDENTIAL

1  STATE OF CALIFORNIA     )
                           ) ss.
2  COUNTY OF VENTURA       )

3

4

5      I, MIZRAIN ORREGO, hereby certify under
6  penalty of perjury under the laws of the State of
7  California that the foregoing is true and correct.
8      Executed this _____ day of _____,
9  20___, at _____, California.

10

11

12

13                         _____
                           MIZRAIN ORREGO, VOLUME II

Page 288

CONFIDENTIAL

| | |
|---|---|
| 1 | STATE OF CALIFORNIA )
| | ) ss.
| 2 | COUNTY OF VENTURA )

      I, Tamara L. Carlson, C.S.R. No. 12555, a Certified Shorthand Reporter of the State of California, do hereby certify:

      That the foregoing proceedings were taken remotely at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand, which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

      Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not required.

      I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: June 3, 2020

*Tamara L. Carlson*

Tamara L. Carlson
CSR No. 12555

Page 289