# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE CENTRAL DISTRICT OF CALIFORNIA
 3
 4
    SHELDON LOCKETT, MICHELLE DAVIS;   )
 5  AND CLYDE DAVIS,                   )CASE NO.
                                       )2:18-CV-5838-PJW
 6                    PLAINTIFFS,      )
                                       )
 7             VS.                     )
                                       )
 8  COUNTY OF LOS ANGELES, A PUBLIC    )
    ENTITY; LOS ANGELES COUNTY         )
 9  SHERIFF'S DEPARTMENT, A LAW        )
    ENFORCEMENT AGENCY; SHERIFF        )
10  JIM MCDONNELL; MIZRAIN ORREGO, A   )
    DEPUTY LOS ANGELES COUNTY SHERIFF; )
11  SAMUEL ALDAMA, A DEPUTY            )
    LOS ANGELES COUNTY SHERIFF; AND    )
12  DOES 1 THROUGH 100, INCLUSIVE,     )
                                       )
13                    DEFENDANTS.      )
    _____)
14
15
16          REMOTELY TAKEN DEPOSITION OF
17             CAPTAIN WILLIAM JAEGER
18             LOS ANGELES, CALIFORNIA
19                  MAY 27, 2020
20
21
22
23  JOB NO. 4118329
24  REPORTED BY:   VICTORIA I. WERTZ, RPR, CSR NO. 7999
25  PAGES 1-102
```

Page 1

```
1       A   Sir, I don't know why a formal              11:04:59
2    investigation was not requested.  I can tell you   11:05:02
3    that Internal Affairs Bureau is given an           11:05:05
4    investigation after information is determined of   11:05:12
5    some sort of wrongdoing.                           11:05:17
6         My knowledge is that Compton station has     11:05:21
7    not gotten to that or risen to that level, and    11:05:23
8    therefore, no formal investigation was conducted. 11:05:27
9       Q   So you don't feel there was any wrongdoing 11:05:29
10   within the Compton station; is that correct?      11:05:32
11            MR. ALTURA:  Actually, misstates         11:05:38
12   testimony, overbroad.                             11:05:39
13   BY MR. SWEENEY:                                   11:05:42
14      Q   I mean, wrongdoing with respect to the     11:05:42
15   alleged clique gang within Compton station.       11:05:46
16            MR. ALTURA:  Same objections.            11:05:52
17            THE WITNESS:  Again, sir, you are asking 11:05:55
18   the question in a way that is suggesting to me that 11:05:57
19   it's a known fact that we have a gang in Compton. 11:06:03
20   And I don't know that to be the case.             11:06:06
21   BY MR. SWEENEY:                                   11:06:09
22      Q   Okay.                                      11:06:09
23          Hypothetically, if there were a clique     11:06:10
24   gang with 20 members -- or maybe 40 members -- and 11:06:12
25   they were aggressively policing and committing    11:06:18
```

Page 35

| | | |
|---|---|---|
| 1 | BY MR. SWEENEY: | 11:10:00 |
| 2 | Q Captain Jaeger, I'm not talking about you | 11:10:00 |
| 3 | doing an investigation. I'm asking why your | 11:10:03 |
| 4 | department didn't do an investigation into the | 11:10:07 |
| 5 | sheriff clique gang when you found out that there | 11:10:10 |
| 6 | were 20 tattooed deputies at the station. | 11:10:13 |
| 7 | MR. ALTURA: Objection, lacks foundation. | 11:10:19 |
| 8 | Assumes facts that have not been established. | 11:10:24 |
| 9 | THE WITNESS: Sir, I'm not able to answer | 11:10:27 |
| 10 | that question simply based on the fact that you are | 11:10:28 |
| 11 | asking why the department did not investigate that. | 11:10:31 |
| 12 | The leadership within the organization has | 11:10:35 |
| 13 | to request an investigation to be done. That | 11:10:36 |
| 14 | request never came to Internal Affairs. | 11:10:41 |
| 15 | BY MR. SWEENEY: | 11:10:44 |
| 16 | Q But why? | 11:10:44 |
| 17 | A I don't know, sir. | 11:10:48 |
| 18 | Q Why do you suspect? | 11:10:52 |
| 19 | MR. IVIE: Objection, Mr. Sweeney, that | 11:10:55 |
| 20 | calls for speculation. Objection on the | 11:10:56 |
| 21 | part -- it's beyond the scope of the designation. | 11:10:59 |
| 22 | BY MR. SWEENEY: | 11:11:04 |
| 23 | ==Q Would you agree with me that if an== | 11:11:04 |
| 24 | ==organization of rogue deputies existed within the== | 11:11:11 |
| 25 | ==Compton station that they should be investigated?== | 11:11:16 |

Page 39

Personal Court Reporters, A Veritext Company
818-988-1900

| | | |
|---|---|---|
| 1 | I'm not saying there is one. But wouldn't | 11:11:19 |
| 2 | you agree with me that if a rogue group of deputies | 11:11:21 |
| 3 | within the Sheriff's Department existed in the | 11:11:26 |
| 4 | Compton station, they should be investigated? | 11:11:28 |
| 5 | MR. ALTURA: I will object that it lacks | 11:11:33 |
| 6 | foundation and beyond the scope. It calls for | 11:11:35 |
| 7 | speculation. | 11:11:37 |
| 8 | MR. IVIE: The question is also ambiguous | 11:11:43 |
| 9 | and vague in terms of what you mean by "rogue." | 11:11:45 |
| 10 | BY MR. SWEENEY: | 11:11:50 |
| 11 | Q  You can answer the question. | 11:11:50 |
| 12 | A  I will agree that any suggestion of | 11:11:56 |
| 13 | misbehavior by a deputy or a group of deputies at a | 11:12:00 |
| 14 | station should be investigated, yes. | 11:12:03 |
| 15 | Q  Do you know this group of at least 20 or | 11:12:15 |
| 16 | up to 40 deputies -- at the Compton station -- do | 11:12:17 |
| 17 | you know whether or not it is a secret society? | 11:12:23 |
| 18 | MR. IVIE: Objection, that question | 11:12:33 |
| 19 | assumes facts not established. And also calls for | 11:12:34 |
| 20 | speculation on the part of the witness. | 11:12:38 |
| 21 | BY MR. SWEENEY: | 11:12:40 |
| 22 | Q  You can answer. | 11:12:40 |
| 23 | A  Sir, I am not aware of -- first over | 11:12:41 |
| 24 | anything termed a secret society. I'm not sure | 11:12:46 |
| 25 | that I would have knowledge of if it was truly | 11:12:49 |

Page 40

| | | |
|---|---|---|
| 1 | secret. And secondly, I have not been or been made | 11:12:53 |
| 2 | aware that there is such a group of individuals | 11:12:58 |
| 3 | that are behaving against the policies and | 11:13:01 |
| 4 | procedures of the department. | 11:13:04 |
| 5 | Q   Do you believe that Samuel Aldama behaved | 11:13:06 |
| 6 | improperly when he shot and killed Dante Taylor? | 11:13:11 |
| 7 | MR. IVIE:  That is clearly outside of the | 11:13:20 |
| 8 | scope of the designation. | 11:13:22 |
| 9 | MR. SWEENEY:  Okay. | 11:13:24 |
| 10 | Is that your objection? | 11:13:26 |
| 11 | MR. IVIE:  Yes. | 11:13:28 |
| 12 | BY MR. SWEENEY: | 11:13:30 |
| 13 | Q   Okay. | 11:13:30 |
| 14 | You can answer. | 11:13:31 |
| 15 | A   I believe that that shooting was | 11:13:34 |
| 16 | investigated.  I believe that it went to an | 11:13:37 |
| 17 | Executive Force Review Committee, and I believe the | 11:13:41 |
| 18 | committee weighed in as to their findings of that. | 11:13:43 |
| 19 | I don't share any opinion. | 11:13:46 |
| 20 | Q   Okay. | 11:13:48 |
| 21 | Have you seen the deposition of | 11:13:50 |
| 22 | Samuel Aldama in Andrew Taylor versus County of | 11:13:53 |
| 23 | Los Angeles? | 11:14:07 |
| 24 | A   I have seen a portion of it. | 11:14:09 |
| 25 | Q   And you saw the portion where I asked | 11:14:12 |

Page 41

```
1        A    Again, sir, I don't believe there was a        11:28:05
2   request for an investigation to be done.  I believe       11:28:08
3   that Sheriff McDonnell, in the opening paragraph,         11:28:10
4   said a "comprehensive inquiry."  That's not an            11:28:13
5   investigation.                                            11:28:18
6        Q    Do you agree that an inquiry should have        11:28:19
7   been undertaken at the Compton station into this up       11:28:24
8   to 20 -- maybe as many as 40 gang members with            11:28:31
9   similar tattoos?                                          11:28:38
10            MR. IVIE:  Objection, assumes facts not in      11:28:42
11  evidence, facts established.  Called for                  11:28:44
12  speculation on part of the witness.                       11:28:47
13            MR. ALTURA:  I will join those objections       11:28:49
14  and object that it's outside of the scope.                11:28:50
15  BY MR. SWEENEY:                                           11:28:53
16       Q    You can answer.                                 11:28:53
17            MR. IVIE:  Outside of the scope of the          11:28:55
18  designation, Mr. Sweeney.                                 11:28:56
19            You can answer.                                 11:28:58
20  BY MR. SWEENEY:                                           11:28:58
21       Q    You can answer.                                 11:28:58
22       A    I'm not aware of any behavior that would        11:28:59
23  lead to an investigation.  As to an inquiry into          11:29:04
24  any matter, I'm not here to lay judgment on whether       11:29:07
25  or not it should have or should not have been done.       11:29:13
```

Page 53

Personal Court Reporters, A Veritext Company
818-988-1900

| | | |
|---|---|---|
| 1 | I don't know any facts to support that. | 11:29:16 |
| 2 | Q   Do you think that a Deputy Sheriff with a | 11:29:21 |
| 3 | badge and gun doing things under color of authority | 11:29:26 |
| 4 | who admits that he has ill feelings towards | 11:29:30 |
| 5 | blacks -- do you think that that would | 11:29:34 |
| 6 | trigger -- should have triggered an investigation? | 11:29:37 |
| 7 | MR. IVIE:  That's outside of the scope of | 11:29:42 |
| 8 | the designation.  It assumes facts not established. | 11:29:45 |
| 9 | Argumentative.  Incomplete hypothetical.  Calls for | 11:29:49 |
| 10 | speculation and conjecture on the part of the | 11:29:53 |
| 11 | witness. | 11:29:56 |
| 12 | BY MR. SWEENEY: | 11:29:56 |
| 13 | Q   You can answer. | 11:29:56 |
| 14 | A   Sir, again, going back to the deputy's | 11:30:00 |
| 15 | testimony, I don't believe that his testimony ended | 11:30:04 |
| 16 | at the point of him having ill feelings towards a | 11:30:07 |
| 17 | particular group -- as I remember reading the | 11:30:10 |
| 18 | testimony. | 11:30:13 |
| 19 | That said, certainly I am not going to | 11:30:15 |
| 20 | disagree with you that if a deputy did have ill | 11:30:18 |
| 21 | feelings towards a particular group based on race, | 11:30:22 |
| 22 | and there was some misconduct that was going along | 11:30:29 |
| 23 | with that, that should absolutely be investigated. | 11:30:33 |
| 24 | Q   Thank you. | 11:30:36 |
| 25 | Moving on to Category 3. | 11:30:44 |

Page 54

```
 1                    REPORTER'S CERTIFICATE

 2

 3      I, VICTORIA IMHOF WERTZ, RPR, CSR NO. 7999,

 4   Certified Shorthand Reporter, certify:

 5           That the foregoing proceedings were taken

 6   before me at the time and place therein set forth,

 7   at which time the witness was put under oath by me;

 8           That the testimony of the witness and all

 9   objections made at the time of the examination

10   were recorded stenographically by me and were

11   thereafter transcribed;

12           That the foregoing is a true and correct

13   transcript of my shorthand notes so taken.

14           I further certify that I am not a relative

15   or employee of any attorney or of any of the

16   parties, nor financially interested in the action.

17           I declare under penalty of perjury under

18   the laws of California that the foregoing is true

19   and correct.

20           Dated this 2nd day of June, 2020.

21

22

23           _____

24

25           VICTORIA IMHOF WERTZ, RPR, CSR No. 7999
```

Page 102