John E. Sweeney, Esq. (State Bar No. 116285)
**THE SWEENEY FIRM**
315 S. Beverly Drive, Suite 200
Beverly Hills, CA 90212
Tel. No.: (310) 277-9595 / Fax No.: (310) 277-0177
E-Mail: jes@thesweeneyfirm.com

Steven C. Glickman, Esq. (State Bar No. 105436)
**GLICKMAN & GLICKMAN,**
**A LAW CORPORATION**
9460 Wilshire Boulevard, Suite 330
Beverly Hills, CA 90212
Tel. No.: (310) 273-4040 / Fax No.: (310) 273-0829
E-Mail: scg@glickman-law.com

Attorneys for Plaintiff SHELDON LOCKETT

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHELDON LOCKETT,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a law enforcement agency; SHERIFF JIM McDONNELL; MIZRAIN ORREGO, a Deputy Los Angeles County Sheriff; SAMUEL ALDAMA, a Deputy Los Angeles County Sheriff; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-5838- DSF-JPR<br><br>**DECLARATION OF STEVEN C. GLICKMAN IN SUPPORT OF PLAINTIFF'S REPLY TO MOTION TO REOPEN DISCOVERY FOR THE LIMITED PURPOSE OF COMPELLING DEFENDANT COUNTY OF LOS ANGELES TO PRODUCE BULLET SHELL CASINGS FOR GUNSHOT RESIDUE TESTING**<br><br>Hearing Date: August 16, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Dale S. Fischer<br>Courtroom: 7D<br>Courthouse: First Street Courthouse<br>350 West 1st Street<br>Los Angeles, CA |

1

DECLARATION OF STEVEN C. GLICKMAN IN SUPPORT OF PLAINTIFF'S REPLY TO MOTION TO REOPEN DISCOVERY FOR PURPOSE OF TESTING BULLET CASINGS

**DECLARATION OF STEVEN C. GLICKMAN**

I, Steven C. Glickman, declare as follows:

1. I am an attorney admitted to the United States District Court for the Central District of California, and duly licensed to practice law in California. I am a principal at Glickman & Glickman, ALC, co-counsel of record for Plaintiff Sheldon Lockett ("**Plaintiff**").

2. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief, and as to those, I am informed and believe them to be true. If called as a witness, I could and would testify to the contents of this declaration. I make this declaration in support of the Reply to Plaintiff's Motion to Reopen Discovery for the Limited Purpose of Compelling Defendant County of Los Angeles to Produce Bullet Shell Casings for Gunshot Residue ("**GSR**") Testing.

3. In the moving papers and in my declaration submitted in support of the moving papers, I was unclear that Plaintiff only recently learned that the bullet shell casings at issue *were never tested*. To the extent the wording in the moving papers or declaration suggested that Plaintiff only recently learned of the existence of the shell casings, that was an oversight and inaccurate.

4. Although Plaintiff admittedly received the County's initial disclosures, those disclosures 1) did not show that the shell casings were ever tested to determine the composition of the primers or compare those to the GSR evidence from Plaintiff's hand and sleeve; 2) did not show that additional GSR evidence was missing from the production; and 3) did not include all of the GSR-related evidence in the County's possession. Additional GSR evidence was only produced much later by the County, after the discovery cut-off.

5. As I stated in the declaration submitted with the moving papers, Bryan Burnett, Plaintiff's expert witness testifying regarding GSR testing, brought to my attention in or around early April 2021 that the composition of the primers in the bullet shell casings was never compared with the GSR found on Plaintiff's hand and

sleeve. It was an oversight and error to say that Mr. Burnett determined this solely through photographs of the casings. Mr. Burnett's April 28, 2021 declaration, attached hereto as **Exhibit "2**," explains more accurately how Mr. Burnett determined that the GSR particles of the shell casings were not tested, i.e., by reviewing the "complete GSR reports on the results of scanning electronic microscope/energy dispersive x-ray spectroscopy of the hand samples from Mr. Lockett and results of the analysis from three of the four samples from Mr. Lockett's sweatshirt." *See* Burnett Dec., ¶ 2, and attachment (April 6, 2021 "points of testimony" summary). Attached hereto as **Exhibit "3"** is Mr. Burnett's June 5, 2020 declaration that he references in the April 28, 2021 declaration.

6. I was not aware at the time of receiving the County's initial disclosures—or indeed, until speaking with Mr. Burnett in or around April 2021—that the composition of the primers of the GSR in the spent bullet shell casings could be tested and compared to the composition of the primers of the GSR on Plaintiff's sleeve and hand. Plaintiff was diligent in that he retained a GSR expert, Mr. Burnett, upon receiving the County's disclosures including the Incident Report. However, specific knowledge of how to test the composition of primers in GSR is beyond a layperson's understanding (and my understanding as a lawyer), and I do not believe Plaintiff should have been expected to understand upon reading the Incident Report produced by the County what GSR testing had *not* occurred but should have taken place. When I became aware of this issue through conversation with Mr. Burnett, I promptly raised it with Defendants.

7. As to all other factual assertions and summary of the events in this case set forth in the reply papers, they are true and correct based on my personal knowledge.

/ / /

/ / /

/ / /

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 2nd day of August, 2021, at Sherman Oaks, California.

By /Steven C. Glickman
Steven C. Glickman

# EXHIBIT 2

UNITED STATES DISTRICT COURT
THE CENTRAL DISTRICT OF CALIFORNIA

SHELDON LOCKETT; MICHELLE DAVIS; AND CLYDE DAVIS,

PLAINTIFFS,

vs.

COUNTY OF LOS ANGELES, A PUBLIC ENTITY; LOS ANGELES ) COUNTY SHERIFF'S DEPARTMENT, A LAW ENFORCEMENT AGENCY; SHERIFF JIM MCDONNELL; MIZRAIN ORREGO, A DEPUTY LOS ANGELES COUNTY SHERIFF; SAMUEL ALDAMA, A DEPUTY LOS ANGELES COUNTY SHERIFF; AND DOES 1THROUGH 100, INCLUSIVE,

DEFENDANTS

Case No.: 2:18-CV-5838-PJW

DECLARATION OF BRYAN BURNETT IN SUPPORT OF THE PLAINTIFF: Points of testimony – Omissions due to premature termination of deposition testimony on April 7, 2021 with no prospect of continuation.

I, Bryan Burnett, declare regarding my deposition testimony April 7, 2021 as follows:

1. My 2017 peer-reviewed publication (*Burnett B.R. and Lebiedzik J. Discharge of a pistol out a car window with the breech within the interior of the car: Analysis of gunshot residue on a car's interior surface. Journal of Forensic Sciences 62(3):768-772*) analyzes a similar shooting case. No questions were asked as to how my findings presented in this article relate to the shooting in the Lockett case.

2. The nature of the characteristic gunshot residue (GSR) particles found on Mr. Lockett's hands and sweatshirt were discussed during my deposition testimony. But no questions were asked concerning the five casings found at the shooting scene and how the GSR within these casings would provide a critical addition to the GSR evidence

3. I was not asked about, but was also prepared to testify about the "points of testimony" in my April 6, 2021 summary (see attached) .

4. I also have the other items on my attached errata sheet.

Dated this 28th day of April 2021.

Bryan Burnett

Meixa Tech

*Forensic Scanning Electron Microscopy Including Gunshot Residue*
*Crime Scene Analysis*

RE: Lockett et al. v. COUNTY OF LOS ANGELES, et al.
Case No.: 2:18-CV-5838-PJW
Deposition of Bryan Burnett, Points of testimony

April 6, 2021

I, Bryan Burnett, expert on gunshot residue (GSR) and crime scene reconstruction have examined the material presented in declaration (June 5, 2020). In addition I have reviewed:

1. The complete GSR reports on the results of scanning electron microscope/energy dispersive x-ray spectroscopy of the hand samples from Mr. Lockett and results of the analysis from three of the four samples from Mr. Lockett's sweatshirt): right sleeve (sample 1), right front (sample 2) and left sleeve (sample 4). Sample 3 (left front of the sweatshirt was not examined.)

2. Part of the deposition transcript of Mr. Lockett, December 16, 2019 Vol 2 pp. 294 - 324.

I believe I have recounted all the materials reviewed by me on this case to come to the following observations and conclusions.

1. Gunshot residue was present on the hands of Mr. Lockett as well as the right sleeve of his sweatshirt.

2. The characteristic GSR resulted from a primer of lead (Pb), barium (Ba) and calcium silicide ($CaSi_2$). Traces of antimony were present in some the GSR, the origin of which was likely a memory effect.

3. Antimony (Sb) and barium (Ba) -containing particles which also have iron (Fe) and copper (Cu) particles, are present on the hands, right sleeve and right front of the sweater samplers are of automotive origin.

4. No GSR or automotive-origin particles were found on the left sleeve of Lockett's sweatshirt.

**1624 Debann Road**
**Cardiff-by-the-Sea, CA 92007-1102**
**(760)634-5939, bryan@meixatech.com**

**The Shooting:**

1. The shooter and vehicle driver fired a 9 mm pistol from his car through the open passenger side window (from account of witness Ross).

2. The shooter had the pistol far enough out the passenger side window to eject five casings onto the street.

3. Under these circumstances, the close proximity of the breech of the pistol to the interior of the car likely put GSR into the car on all surfaces. Under these circumstances, Lockett's sweatshirt should have been totally GSR contaminated.

4. Only the samples from Lockett's hands and right sleeve showed GSR contamination.

5. The hand samplers, Lockett's right sleeve and front sweatshirt samplers show particles distinctive of friction brake origin. The presence of these particles on the right sweatshirt front and not characteristic GSR particles indicate these particles were transfer from a different source.

6. The physical contact by police officers with Lockett (Lockett's deposition transcript) prior to GSR sampling more likely than not transferred and thus contaminated Lockett with GSR.

7. The lack of any heavy metals indicative of GSR on Lockett's left sleeve sampler indicate a physical transfer of GSR and automotive-origin particles to right sleeve of the sweatshirt and were not air borne.

[signature]

Bryan Burnett

# EXHIBIT 3

UNITED STATES DISTRICT COURT
THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELDON LOCKETT; MICHELLE DAVIS; AND CLYDE DAVIS,<br><br>PLAINTIFFS,,<br><br>VS..<br><br>COUNTY OF LOS ANGELES, A PUBLIC ENTITY; LOS ANGELES ) COUNTY SHERIFF'S DEPARTMENT, A LAW ENFORCEMENT AGENCY; SHERIFF JIM MCDONNELL; MIZRAIN ORREGO, A DEPUTY LOS ANGELES COUNTY SHERIFF; SAMUEL ALDAMA, A DEPUTY LOS ANGELES COUNTY SHERIFF; AND DOES 1)THROUGH 100, INCLUSIVE,<br><br>DEFENDANTS | Case No.: 2:18-CV-5838-PJW<br><br>DECLARATION OF BRYAN BURNETT IN SUPPORT OF THE PLAINTIFF<br><br>Date: June 5, 2020<br>Time: 02:00 p.m. |

I, Bryan Burnett, declare as follows:

1. I am over the age of eighteen and not a party to this litigation. I have personal knowledge of the documents and only those documents released to me by Plaintiff's Counsel set forth below and if called upon to testify thereto could and would competently do so.

2. I am an expert in the areas of forensic scanning electron microscopy (including gunshot residue/energy dispersive X-ray analysis (SEM/EDS)), crime scene

reconstruction and digital imaging. I have been working in these fields for more than the past 30 years and have published in peer-reviewed forensic journals in all of these fields. I have testified in California Superior Courts on dozens of occasions and have been a court-accepted expert in the areas of gunshot residue and crime scene reconstruction. Although I am an expert in digital imaging (publications), I do not recall having been specifically court designated as an expert in this field although this expertise was frequently instrumental in the analysis of scene/autopsy images presented in court.

3. I have reviewed the following documents in support of this declaration:

A. Transcript of Plaintiff Sheldon Lockett's Mediation Brief. April 27, 2020
B. Sheriff's Gunshot Residue Lab Report (incomplete) March 17, 2016
C. Kenton S. Wong. Comments on the Gunshot Residue Report, June 15, 2016.
D. Incident Report, January 15, 2016 13 pp.
E. Sheriff's Deputy Feria (435521) Report, January 16, 2016
F. Sheriff's Deputy Embleton (515146) report, January 16, 2016
G. Sheriff's Deputy Benzor (501908) Report., January 16, 2016
H. Crime Analysis Supplemental Report, 2 pp (undated)
I. Deposition Transcript of Sheriff's Deputy Benzor (501908), March 2, 2020; 125 pp
J. Supplemental Report, Aldema and Orrego, Bates 410-426, January 19, 2016.
K. Scene images: Eight (8) low resolution (1024x768 pixels) images.
L. Deputy shift record for Friday January 15, 2016 shows Sheriff's Deputy Benzor started his shift at 1500 and ended at 0100.

4. Typically accompanying a GSR report are images of the evidence bag with written information on the bag concerning the collection of the enclosed GSR samplers. This information includes the time of the shooting, when the suspect was sampled as well

as other information which could be important for the interpretation of the GSR sampler analysis results.  This evidence was not provided in the material I received.

5. Document 3B, Sheriff's Gunshot Residue (GSR) Lab Report is incomplete in that it does not include spectral documentation by EDS of the two characteristic GSR (lead/antimony/barium-composed) spherical particles.  I have found in past GSR cases that crime lab analysts have occasionally misinterpreted spectra.  The designation of the two alleged characteristic GSR particles reported in this case cannot be verified and thus there is no support for these designations.

6. The GSR analysis results are not significant.  Assuming the two characteristic GSR particles found on Mr. Lockett's hand samplers are real, this finding does not meet the FBI's criteria of a minimum of three characteristic GSR particles as well as necessarily being accompanied by consistent (two element component, e.g., antimony/barium, lead/barium,  etc) GSR particles for the sampler to be significant (Wright & Trimpe, 2006).

7. Kenton Wong (3C) mentions in his report that Sheldon Lockett's sweater was sampled for GSR.  The discovery transmitted to me does not have the GSR report from the crime lab for the sweater.

8. The potential to contaminate a suspect with GSR from police officers after handling their firearm has been reported (Cook, 2016).  Page 5 of the Supplemental Report (3J) notes that the deputies had their guns drawn, potentially contaminating Lockett with GSR after handling their firearms.  In addition, officers at the start of their

shift also are often contaminated with GSR by the handling of their firearms (Cook, 2016). Multiple deputies would have come into close contact and, in particular, touched Lockett's hands well before Deputy Benzor came on the scene and thus have contaminated Lockett. Deputy Benzor who sampled Lockett came on shift at 1500 on January 15, 2016 (3L). The shooting occurred at 1505 (3D) and Deputy Benzor came in contact with Lockett at approximately 1630 (3I). Even though Deputy Benzor did not draw his firearm during this incident, his handling of it prior to going on shift could also have contaminated Lockett with GSR when he came into contact with him. There is no information on if Deputy Benzor used proper protocol (wearing protective gloves) during the GRS sampling of Lockett.

9. In light of the discussion above, it is my opinion that there is no credible evidence that Lockett fired a gun at around 1505 (the time of the alleged shooting) or that he handled a gun at any time on the date of the subject incident.

References Cited:

Cook, M. 2016 Gunshot residue contamination of the hands of police officers following start of shift handling their firearms. Forensic Science International 269:56-62.

Wright, D. and Trimpe, M. 2006. Summary of the FBI Laboratory's gunshot residue symposium. Forensic Science Communications. 8(3):1-17.

I swear under penalty of perjury pursuant to the laws of the State of California that the above is true and correct.

Dated this 5th day of June 2020.

Bryan Burnett