**RICKEY IVIE, ESQ. (SBN 76864)**
*rivie@imwlaw.com*
**DAVIDA M. FRIEMAN, ESQ. (SBN 232096)**
*dfrieman@imwlaw.com*
**ANTONIO K. KIZZIE, ESQ. (SBN 279719)**
*akizzie@imwlaw.com*
**IVIE McNEILL WYATT PURCELL & DIGGS, APLC**
444 South Flower Street, Suite 1800
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552

Attorneys for Defendant, **COUNTY OF LOS ANGELES**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHELDON LOCKETT

*Plaintiff*

vs.

COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; a law enforcement agency; former SHERIFF JIM MCDONNELL; MIZRAIN ORREGO, a Deputy Los Angeles County Sheriff; SAMUEL ALDAMA, a Deputy Los Angeles County Sheriff; and DOES 1 through 100, inclusive,

*Defendants.*

CASE NO.: 2:18-cv-5838-PJW

**DEFENDANTS' MEMORANDUM OF CONTETIONS OF FACTS AND LAW**

***Final Pre-trial Conference:***
Date: November 15, 2021
Time: 3:00 p.m.
Courtroom: 7D
Courthouse: First Street Courthouse
350 West 1st Street
Los Angeles, CA

***Trial***
Date: December 14, 2021
Time: 8:30 a.m.
Courtroom: 7D
Courthouse: First Street Courthouse
350 West 1st Street
Los Angeles, CA

**TO THE HONORABLE DALE S. FISCHER, UNITED STATES DISTRICT JUDGE, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** Pursuant to Local Rule 16-4, DEFENDANTS COUNTY OF LOS ANGELES, (hereinafter "COLA") the Los Angeles Sheriff's Department (hereinafter "LASD") and Deputy Samuel Aldama (hereinafter "Deputy Aldama") hereby submit their Memorandum of Contentions of Facts and Law as follows:

**TABLE OF CONTENTS**


**I.** SUMMARY OF PLAINTIFF'S CLAIMS AND ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS………... 1

a. Summary Statement of the Claims Plaintiff has Pleaded and Plans to Pursue………………………………........…… 1

b. Elements Required to Establish Plaintiff's Claims.................. 1

**II.** KEY EVIDENCE THAT IS COMMON TO OPPOSE EACH OF PLAINTIFFS CLAIMS…….………………….......................... 5

**III.** SUMMARY OF DEFENDANTS' AFFIRMATIVE

**IV.** DEFENSES..........……………………………………………… 10

**V.** BIFURCATION OF ISSUES……………………….................. 10

**VI.** JURY TRIAL……………………………………………….. 10

**VII.** ATTORNEY'S FEES……………………………….…......... 11

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I. SUMMARY OF PLAINTIFF'S CLAIMS AND ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS

***(a) Summary Statement of the Claims Plaintiff has Pleaded and Plans to Pursue (L.R.16-4.1(a)):***

**First Claim: Excessive Force (42 U.S.C. §1983) against Deputy Aldama**

Under Plaintiff's First Claim he alleges a deprivation of his Fourth and Fourteenth Amendment rights. *See generally* Doc. 1 (Plaintiff's Complaint); Doc. 41 (Second Amended Complaint or "SAC"), 7:23-8:26.[1] Plaintiff claims that Deputy Aldama used excessive force while Plaintiff was attempting to surrender to deputies. SAC, p.5:21-25; p.8:1-14. The alleged violations are as follows:

**a.** The right to be free from excessive and unreasonable force in the course of arrest or detention as secured by the Fourth and Fourteenth Amendments;

**b.** The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

**c.** The right to be free from the unlawful use of a Taser as secured by the Fourth and Fourteenth Amendments; and

**d.** The right to be free of unlawful, reckless, deliberately indifferent, and conscience-shocking excessive force as secured by the Fourteenth Amendment.

SAC, p.8:5-14.

//

[1] The operative complaint is Plaintiff's Second Amended Complaint for Damages, Dkt. 41, filed November 16, 2018.

**<u>Second Claim:</u> Failure to Properly Screen, Hire, Train, Supervise and Discipline (Monell Violation) (U.S.C. §1983)**

Plaintiff claims that, pursuant to *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978)("*Monell*"), LASD deputies used excessive force pursuant to unconstitutional customs, policies, practices and or procedures of the LASD that were directed, encouraged, allowed and/or ratified by policy making officers/deputies for COLA and LASD and that COLA and the LASD failed to properly hire, train, instruct, monitor supervise, evaluate, investigate and discipline deputies. *See* SAC, Dkt. 41, pp.9:8-11:14.

- Plaintiff's Claim 1: COLA and the LASD had an unconstitutional policy custom or practice pertaining to the use of excessive force by deputies;
- Plaintiff's Claim 2: COLA and the LASD failed to train deputies.

***(b) Elements Required to Establish Plaintiff's Claims***

**<u>First Claim (Excessive Force) under U.S.C. §1983 (L.R.16-4.1(b)</u>**

Like all civil rights claims, Plaintiff has the burden of proving by a preponderance of the evidence that (1) a defendant acted under color of law, and (2) that the act[s] or failure to act of the defendant deprived the plaintiff of his particular rights under the United States Constitution. *See* 9th Cir. Model Civil Jury Instruction 9.3. Rev. September 2020.

***Elements for a claim of Excessive Force under U.S.C. §1983***

The parties have stipulated to the fact that Deputy Aldama was acting under color of law at all times relevant to this litigation. Accordingly, Plaintiff's burden is to prove by a preponderance of the evidence that Deputy Aldama used force beyond what was objectively reasonable for the specific situation he encountered.

The Ninth Circuit's newly updated (Sept. 2020) civil jury instructions include a multi-part test to evaluate the objective reasonableness (or unreasonableness), of a law enforcement officer's actions. Plaintiff must prove by a preponderance of the evidence that Deputy Aldama used excessive force (that is, acted in an objectively unreasonable way) when he and the three other Los Angeles County Sheriff's Department Deputies took plaintiff into custody. In determining whether Deputy Aldama used excessive force in this case, the following factors are considered:

(1) The nature of the crime or other circumstances known to the officer at the time the force was applied;

(2) Whether plaintiff posed an immediate threat to the safety of the officers or to others;

(3) Whether the plaintiff was actively resisting or attempting to evade arrest by flight;

(4) The amount of the time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) The type and amount of force used;

(6) The availability of alternative methods to take the plaintiff into custody;

(7) The number of lives at risk and the parties' relative culpability; i.e. which party created the dangerous situation, and which party is more innocent;

(8) Whether it was practical for the officers to give warning of the imminent use of force, and whether such warning was given;

(9) Whether the officer was responding to a domestic violence disturbance;

(10) Whether it should have been apparent to the officers that the person he used force against was emotionally disturbed.

(11) Whether a reasonable officer would have or should have accurately perceived a mistaken fact;

(12) Whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serous physical harm; and

(13) Whether Mr. Lockett was concealing his hands from Deputy Aldama.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

*Sources: Model Jury Instruction No. 9.25 Particular Rights—Fourth Amendment - Unreasonable Seizure Of Person—Excessive Force; Model Jury Instruction No. 9.20* Particular Rights—Fourth Amendment—Unreasonable Seizure Of Person—Generally

**Second Claim: *Monell* claim against COLA – U.S.C §1983 (L.R.16-4.1(b)**

- Plaintiffs' Claim – COLA and the LASD failed to train Deputy Aldama. ***NOTE***: Plaintiff has failed to identify any other deputy by name as required by the Model Jury Instruction. As such, only Deputy Aldama is identified in this jury instruction.

***Failure to Train under U.S.C. §1983***

In order to prevail on his § 1983 claim against defendants County of Los Angeles and the Los Angeles Sheriff's Department alleging liability based on a theory of failure to train its deputy sheriff, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the act of Defendant Deputy Aldama deprived plaintiff of his particular rights under the laws of the United States to be free from excessive force

2. Deputy Aldama acted under color of state law;

3. the training policies of defendant County of Los Angeles and or the Los Angeles County Sheriff's Department were not adequate to train its deputy sheriffs to handle the usual and recurring situations with which they must deal;

4. the defendant County of Los Angeles and Los Angeles County Sheriff's Department were deliberately indifferent to the known or obvious consequences of its failure to train its deputies adequately; and

5. the failure of defendant County of Los Angeles and/or the Los Angeles Sheriff's Department to provide adequate training caused the deprivation of plaintiff's rights by Defendant Deputy Aldama; that is, the defendants' failure to train played a substantial part in bringing about or actually causing the injury or damage to plaintiff.

***Plaintiff must also establish the elements under Model Jury Instruction 9.25 Particular Rights—Fourth Amendment - Unreasonable Seizure Of Person—Excessive Force (stated in relevant part above) in order to establish his claim for Failure to Train.***

*Source:* *Model Jury Instruction 9.8 Section 1983 Claim Against Local Governing Body Defendants Based On A Policy That Fails To Prevent Violations Of Law Or A Policy Of Failure To Train—Elements And Burden Of Proof (Not stated in its entirety)*

## II. KEY EVIDENCE THAT IS COMMON TO OPPOSE EACH OF PLAINTIFFS CLAIMS

There is very little overlap in the "Venn diagram" of evidence relevant to Plaintiff's first claim (excessive force against Deputy Aldama) and his second claim (*Monell* liability against the County of Los Angeles and Los Angeles County

Sheriff's Department) *See generally*, Joint Exhibit List (Dkt. 294); Joint Witness List (to be filed).

Evidence Defendants reasonably believe Plaintiff will introduce consists of:

1. Testimony of Deputy Aldama,
2. Documents and items set forth in Defendants' Pretrial Disclosures including but not limited to
    a. Deposition transcripts of
        i. Plaintiff Sheldon Lockett
        ii. Los Angeles County Sheriff's Department Deputy Mizrain Orrego (former deputy)
        iii. Los Angeles County Sheriff's Department Deputy Feria
        iv. Los Angeles County Sheriff's Department Deputy Embleton
    b. Training records of Deputy Aldama
    c. Training records of other deputies
3. Video of Plaintiff immediately after the detention
4. Video of a subsequent detention of Plaintiff (completely different and unrelated encounter with Los Angeles County Sheriff's Department personnel)
5. Retained expert witnesses
    a. Dr. Anthony Reading,
    b. Dr. Alfred Joshua,
    c. Chief Clarence Chapman (ret.),
    d. Mr. Zengler,
    e. Jeronimo Casasola
6. Unretained experts
    a. Jerry Saba
    b. Eduardo Flores

c. Neal Tyler
d. Capt. William Jaeger
e. Dr. Chun Joey Chang
f. Marlon A. Estrella R.N.
g. Dr. Atul Patel
h. Dr. Nicholaus Keuhn

7. Los Angeles County Sheriff's Department Manual of Policies and Procedures
    a. Use of Force Policies
    b. Use of Force Chart
8. Plaintiff's medical records and testimony from his treating doctors/medical provider(s). (identified as non-retained witnesses above).

Of all this evidence, only the testimony of Plaintiff, Deputy Aldama, Deputy Embleton, Deputy Feria, Deputy Orrego and use of force expert Clarence Chapman is relevant to Plaintiff's First Claim (for excessive force against Deputy Aldama). The hundreds of other witnesses (approximately 275) and exhibits (multiple hundreds) are all irrelevant to the objective reasonableness of the forced used by Deputy Aldama to overcome the resistance of Plaintiff Sheldon Lockett.

**Summary of Facts**

In the afternoon of January 15, 2016, Imunique Ross ("Ross") and Treymayne Cole were standing in front of a house in the City of Compton in an area controlled by the Tree Top Piru street gang. A silver car pulled up next to the residence, and the driver started shooting. Mr. Cole was shot in the leg. The police were called and an all-crime broadcast was initiated describing the shooter and requesting assistance.

Deputy Aldama and Deputy Mizrain Orrego ("Orrego") were patrolling in Compton and heard the all-crime broadcast. They assigned themselves to the call and immediately drove west to an area of Compton controlled by the rival Neighborhood Piru gang.

**A. Deputy Aldama's and Deputy Orrego's Initial Interaction with Lockett**

While patrolling, Deputy Aldama and Deputy Orrego saw two individuals, Plaintiff and his friend Timothy Campbell ("Campbell"), on the sidewalk in front of a house drinking out of silver cans, which appeared to resemble an alcoholic beverage like beer. Drinking beer on public property like a sidewalk is a violation of Compton Municipal Code § 7-8.3(a), and the deputies stopped their radio car to talk to Plaintiff and Campbell. Upon existing the vehicle, Deputy Aldama asked Plaintiff, "are you on probation or parole?" Plaintiff did not respond, but instead pulled out a handgun from his waistband and ran east away from the deputies.

The deputies initiated a pursuit, and Deputy Orrego made a "417" call—person with gun—over the "patch." A transmission over the "patch" is heard by all nearby deputies and facilitates coordination of an emergency situation like the one the deputies were handling. The pursuit ended when Plaintiff jumped over a wall into the enclosed patio of a nearby residence and tried to force his way in. The deputies heard the commotion, went to investigate, and found Lockett. They held him at gunpoint until other deputies could arrive for backup.

**B. Use of Force Incident**

Deputy Carlos Feria ("Deputy Feria") and Deputy Austin Embleton ("Deputy Embleton) were patrolling in Compton when they heard the 417 call. They responded to the call and set up a containment zone near the location where Deputy Aldama and Deputy Orrego had last seen Plaintiff. After about a minute, Deputy Feria and Deputy Embleton received a radio transmission that Deputy Aldama and Deputy Orrego had located Plaintiff and were him detaining a few

houses away, and they ran to that location. Deputy Aldama, Deputy Orrego, Deputy Feria, and Deputy Embleton formed an arrest team. Deputy Feria was designated OC spray, Deputy Embleton was designated taser. After forming the arrest team, Deputy Feria boosted himself over the wall and into the enclosed patio, as did Deputy Aldama.

Lockett was inside the enclosed patio on his knees, initially complying with the deputies' order to get on the ground. However, immediately after Deputy Feria and Deputy Aldama entered the patio, Plaintiff without notice or warning, fell forward onto his stomach and concealed both of his hands underneath his body by his waistband. The deputies ordered Plaintiff to show his hands, but he refused. Deputy Feria went to the right side of Plaintiff's body and with all his might began pulling on Plaintiff 's right shoulder/arm area to secure his right hand for handcuffing.

The deputies were unable to secure Plaintiff 's hands. Lockett was shifting his body from left to right preventing Feria from securing his hand. Deputy Aldama struck Plaintiff with his fists 2-3 times in order to gain compliance. The punches did not gain plaintiff's compliance and he continued to resist. Deputy Feria deployed OC spray because Lockett was resistive and Deputy Feria believed that Plaintiff may have been attempting to retrieve a firearm from his waistband.

Shortly after Deputy Feria deployed OC spray, Deputy Embleton jumped into the enclosed patio. Plaintiff's hands were still concealed under his body and he continued to resist being taken into custody. Prior to using the taser, Deputy Embleton yelled "Taser, Taser, Taser." Then, when plaintiff continued to resist, Deputy Embleton fired the taser because Plaintiff refused to give up his hands. Moreover, Deputy Embleton was in fear that he might be reaching for a firearm. Plaintiff continued to resist, however, and Deputy Embleton used the taser a

second time. After the second taser, the deputies were able to gain control over Plaintiff 's hands and he was handcuffed.

## III. SUMMARY OF DEFENDANTS' AFFIRMATIVE DEFENSES

Defendant has not pled any counter claims.

Defendant has pled 37 affirmative defenses. Defendant is abandoning all of their affirmative defenses.

## IV. BIFURCATION OF ISSUES

Defendants have filed a motion to bifurcate Deputy Aldama's liability and Plaintiff's damages from Monell and Punitive liability. This is an excessive force case. If Deputy Aldama did not use excessive force against Plaintiff, this case fails. Plaintiff has not identified any other deputy that allegedly used excessive force in his jury instruction. Defendants Motion to Bifurcate explains in detail the explanation for Defendants' Request and is incorporated herein by reference. (Dkt. 292)

## V. JURY TRIAL

Both parties made a timely demand for a jury trial. All issues are triable to a jury a matter of right.

///

///

///

///

///

## VI. ATTORNEYS FEES

Plaintiff's Second Amended Complaint seeks attorneys' fees under Title 42 U.S.C §§1983 and 1988. Plaintiff Second Amended Complaint also seeks attorneys' fees under state Civil code §§52 et seq, 52.1, 57 and 1021.5 which are irrelevant here because no state claims are pled.

Dated: October 26, 2021

**IVIE MCNEILL WYATT PURCELL & DIGGS**

By: */s/ Davida Frieman*
**RICKEY IVIE,**
**DAVIDA M. FRIEMAN,**
Attorneys for Defendants,
County of Los Angeles and the Los Angeles Sheriff's Department

Dated: October 26, 2021

**SEKI, NISHIMURA & WATASE, LLP**

By /s/ Andrew Pongracz
Gilbert Nishimura
Andrew Pongracz
Attorneys for Defendant
SAMUEL ALDAMA