UNITED STATES DISTRICT COURT
THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELDON LOCKETT; MICHELLE DAVIS; AND CLYDE DAVIS, <br><br>　　　　　PLAINTIFFS,, <br><br>　　　VS.. <br><br>COUNTY OF LOS ANGELES, A PUBLIC ENTITY; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, A LAW ENFORCEMENT AGENCY; SHERIFF JIM MCDONNELL; MIZRAIN ORREGO, A DEPUTY LOS ANGELES COUNTY SHERIFF; SAMUEL ALDAMA, A DEPUTY LOS ANGELES COUNTY SHERIFF; AND DOES 1)THROUGH 100, INCLUSIVE, <br><br>　　　DEFENDANTS | Case No.: 2:18-CV-5838-PJW <br><br>DECLARATION OF BRYAN BURNETT IN SUPPORT OF THE PLAINTIFF <br><br>Date:  June 5, 2020 <br>Time:  02:00 p.m. |

I, Bryan Burnett, declare as follows:

1.　　I am over the age of eighteen and not a party to this litigation. I have personal knowledge of the documents and only those documents released to me by Plaintiff's Counsel set forth below and if called upon to testify thereto could and would competently do so.

2.　　I am an expert in the areas of forensic scanning electron microscopy (including gunshot residue/energy dispersive X-ray analysis (SEM/EDS)), crime scene

---

reconstruction and digital imaging. I have been working in these fields for more than the past 30 years and have published in peer-reviewed forensic journals in all of these fields. I have testified in California Superior Courts on dozens of occasions and have been a court-accepted expert in the areas of gunshot residue and crime scene reconstruction. Although I am an expert in digital imaging (publications), I do not recall having been specifically court designated as an expert in this field although this expertise was frequently instrumental in the analysis of scene/autopsy images presented in court.

    3.    I have reviewed the following documents in support of this declaration:

    A. Transcript of Plaintiff Sheldon Lockett's Mediation Brief. April 27, 2020
    B. Sheriff's Gunshot Residue Lab Report (incomplete) March 17, 2016
    C. Kenton S. Wong. Comments on the Gunshot Residue Report, June 15, 2016.
    D. Incident Report, January 15, 2016 13 pp.
    E. Sheriff's Deputy Feria (435521) Report, January 16, 2016
    F. Sheriff's Deputy Embleton (515146) report, January 16, 2016
    G. Sheriff's Deputy Benzor (501908) Report., January 16, 2016
    H. Crime Analysis Supplemental Report, 2 pp (undated)
    I. Deposition Transcript of Sheriff's Deputy Benzor (501908), March 2, 2020; 125 pp
    J. Supplemental Report, Aldema and Orrego, Bates 410-426, January 19, 2016.
    K. Scene images: Eight (8) low resolution (1024x768 pixels) images.
    L. Deputy shift record for Friday January 15, 2016 shows Sheriff's Deputy Benzor started his shift at 1500 and ended at 0100.

    4.    Typically accompanying a GSR report are images of the evidence bag with written information on the bag concerning the collection of the enclosed GSR samplers. This information includes the time of the shooting, when the suspect was sampled as well

as other information which could be important for the interpretation of the GSR sampler analysis results. This evidence was not provided in the material I received.

5. Document 3B, Sheriff's Gunshot Residue (GSR) Lab Report is incomplete in that it does not include spectral documentation by EDS of the two characteristic GSR (lead/antimony/barium-composed) spherical particles. I have found in past GSR cases that crime lab analysts have occasionally misinterpreted spectra. The designation of the two alleged characteristic GSR particles reported in this case cannot be verified and thus there is no support for these designations.

6. The GSR analysis results are not significant. Assuming the two characteristic GSR particles found on Mr. Lockett's hand samplers are real, this finding does not meet the FBI's criteria of a minimum of three characteristic GSR particles as well as necessarily being accompanied by consistent (two element component, e.g., antimony/barium, lead/barium, etc) GSR particles for the sampler to be significant (Wright & Trimpe, 2006).

7. Kenton Wong (3C) mentions in his report that Sheldon Lockett's sweater was sampled for GSR. The discovery transmitted to me does not have the GSR report from the crime lab for the sweater.

8. The potential to contaminate a suspect with GSR from police officers after handling their firearm has been reported (Cook, 2016). Page 5 of the Supplemental Report (3J) notes that the deputies had their guns drawn, potentially contaminating Lockett with GSR after handling their firearms. In addition, officers at the start of their

shift also are often contaminated with GSR by the handling of their firearms (Cook, 2016). Multiple deputies would have come into close contact and, in particular, touched Lockett's hands well before Deputy Benzor came on the scene and thus have contaminated Lockett. Deputy Benzor who sampled Lockett came on shift at 1500 on January 15, 2016 (3L). The shooting occurred at 1505 (3D) and Deputy Benzor came in contact with Lockett at approximately 1630 (3I). Even though Deputy Benzor did not draw his firearm during this incident, his handling of it prior to going on shift could also have contaminated Lockett with GSR when he came into contact with him. There is no information on if Deputy Benzor used proper protocol (wearing protective gloves) during the GRS sampling of Lockett.

9. In light of the discussion above, it is my opinion that there is no credible evidence that Lockett fired a gun at around 1505 (the time of the alleged shooting) or that he handled a gun at any time on the date of the subject incident.

References Cited:

Cook, M. 2016 Gunshot residue contamination of the hands of police officers following start of shift handling their firearms. Forensic Science International 269:56-62.

Wright, D. and Trimpe, M. 2006. Summary of the FBI Laboratory's gunshot residue symposium. Forensic Science Communications. 8(3):1-17.

I swear under penalty of perjury pursuant to the laws of the State of California that the above is true and correct.

Dated this 5th day of June 2020.

_____
Bryan  Burnett